UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CARLA BARKER,

       *Plaintiff*,

           -against-

IZIA ROKOSZ, JANELLE DEFREITAS,
STEVEN G. LEGUM, FRANK RICHARD
HURLEY, GREGG TELSEY, ROBERT
FISHBEIN, BETTY J. HINGLE, ROYCE
LLC, JACKIE MARKETING LLC, LOCKDECO
A/K/A LODECO, "JOHN DOE #1" though
"JOHN DOE #100," said names being
fictitious and unknown, the parties
intended being persons or
corporations, if any, having
participated in the enterprise
described in the complaint,

       *Defendants*.
----------------------------------X

**<u>MEMORANDUM & ORDER</u>**

19-CV-00514(KAM)

**MATSUMOTO, United States District Judge:**

      Plaintiff Carla Barker ("Plaintiff") commenced this action on January 25, 2019 alleging that defendants committed violations of federal and New York state lending laws. (ECF No. 1, Complaint.) By Order dated January 2, 2020, this court granted defendants' Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motions to dismiss plaintiff's claims under New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 ("Section 349") and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). (ECF No. 119, Order Granting Motions to Dismiss.) On July 31, 2020, plaintiff filed a motion to amend the complaint pursuant to Federal Rule of Civil

1

Procedure 15(a)(2) ("Rule 15(a)(2)").  (ECF No. 152, Motion to Amend.)  Plaintiff seeks to add facts obtained through limited discovery to support her Section 349 and RICO claims against defendants.  (ECF No. 152-2, Plaintiff's Memorandum in Support of Motion at 1.)  Plaintiff also seeks to add a malpractice claim against Defendant Frank Richard Hurley, Esq., who represented plaintiff at the closing of the Subject Loans. (*Id.*)  Separately, defendant, Steven G. Legum ("Legum") filed a cross-motion for sanctions pursuant to 28 U.S.C. § 1927 ("Section 1927") requesting the court to award fees against the attorneys for the plaintiff.  (ECF No. 154, Legum Cross Motion for Sanctions.)

Presently before this court with respect to plaintiff's motion to amend are plaintiff's motion, defendant Legum's Memorandum in Opposition to plaintiff's motion, defendant Rokosz's Memorandum in Opposition to plaintiff's motion, defendants Telsey and Royce LLC's Memorandum in Opposition to plaintiff's motion, and plaintiff's replies to defendants' memoranda in opposition.[1]  (*See* ECF No. 152, Motion

---

[1] Defendant Rokosz also submits affidavits in opposition to plaintiff's motion along with accompanying exhibits.  (ECF No. 158, Rokosz Affidavit in Opposition; ECF No. 159, Doberman Affidavit in Opposition w/ Accompanying Exhibits.)  This court, which will apply a Rule 12(b)(6) standard to determine if the proposed amended claims would be futile, will not consider the affidavits and accompanying exhibits in this Memorandum and Order.  *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F. 3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).");  *see also J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (In a motion

to Amend; ECF No. 153, Legum Memorandum in Opposition; ECF No. 157, Rokosz Memorandum in Opposition; ECF No. 160, Plaintiff's Reply; ECF No. 161, Plaintiff's Reply RE Hurley; and ECF No. 162, Telsey and Royce LLC Memrandum in Opposition.)  With respect to Legum's cross motion for sanctions, the court considers Legum's motion, plaintiff's Memorandum in Opposition, and Legum's reply.  (*See* ECF No. 154, Legum Cross Motion for Sanctions; ECF No. 156, Memorandum in Opposition; ECF No. 155, Legum Reply.)  This Memorandum and Order will address both plaintiff's motion to amend her complaint and defendant Legum's motion for sanctions.  For the reasons set forth below, plaintiff's motion is granted in part and Legum's motion is denied.

## BACKGROUND[2]

Plaintiff's proposed amended complaint re-alleges her Section 349 and RICO claims.  The Court's January 2, 2020 order dismissed plaintiff's Section 349 claim against all defendants because plaintiff did not plead sufficient facts alleging that defendants' conduct was consumer-oriented.  (ECF No. 119, Order

---

to dismiss, "we may not rely on conclusory or hearsay statements contained in the affidavits"); *see also Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

[2] This Memorandum and Order draws on facts from Plaintiff's original complaint and incorporates by reference this court's description of said facts found in its January 2, 2020 Order.  (ECF No. 1, Complaint; ECF No. 119, Order Granting Motion to Dismiss.)  This court will distinguish between the facts presented in the original complaint and those added to plaintiff's proposed amended complaint.

Granting Motion to Dismiss at 23-29.)  Plaintiff's RICO claim
was dismissed because plaintiff did not plead sufficient facts
alleging the existence of an association-in-fact enterprise.
(*Id.* at 32-36.)  "As when considering a motion to dismiss under
Rule 12(b)(6), [a] court" considering a motion for leave to
amend "must accept as true all well-pleaded facts" in a
plaintiff's proposed amended complaint "and draw all reasonable
inferences in the [plaintiff's] favor."  *Artists Rights Enf't
Corp. v. Estate of King*, No. 16 Civ. 1121 (JPO), 2017 WL
2062988, at *3 (S.D.N.Y. May 15, 2017) (quoting *Agerbrink v.
Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016)); *see
also Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*,
215 F.3d 247, 253 (2d Cir.2000) ("we may not rely on conclusory
or hearsay statements contained in the affidavits.")

I.   **Proposed Amended Complaint**

        In her amended complaint, Plaintiff alleges additional
facts in support of her Section 349 and RICO claims.
Supplementing the facts pled in her original complaint,
plaintiff adds a lengthy new section in her proposed amended
complaint titled "Defendants' Related Practices Involving Other
Borrowers."  (ECF No. 152-3, Proposed Amended Complaint ("PAC")
at ¶¶ 154-178.)  This section details that since 2011, defendant
Rokosz "issued at least 26 other mortgage loans with similar
terms" to that of plaintiff's loan, for which Legum acted as

Rokosz's attorney in 22 of the mortgage loans, including plaintiff's two mortgage loan transactions totaling $450,000. (PAC, ¶¶ 155, 157-158.)  Legum was Rokosz's attorney for 22 of the 26 described mortgage loan transactions, (*Id.* ¶ 157.), and between November 2013 and October 2016, Telsey helped arrange at least 13 of these transactions, in which Legum served as the attorney, and Telsey and Royce LLC received proceeds.  (*Id.* ¶ 158.)  Around 2014, Fishbein assisted Telsey in arranging nine of the described mortgage loans originated by Rokosz. (*Id.* ¶ 159.)  Defendants, Rokosz, Legum, Telsey, Royce LLC, and Fishbein, received proceeds from at least 10 of 14 the mortgage transactions between November 2013 and February 2017, (*Id.* ¶ 160.), and all fourteen of these loans "involved loan terms of between 356 days and two years, nominal interest rates of 12 or 13 percent per annum, and a balloon payment of the entire principal sum due on the date of maturity." (*Id.* ¶ 161.)  In at least 10 of these transactions, loan proceeds were held in "escrow," and these funds were not returned to the borrower. (*Id.* ¶¶ 163-164.)  The proposed amended complaint further details the events that occurred in ten of these mortgage loan transactions. (*Id.* ¶¶ 179-264.)

As in her first complaint, Plaintiff similarly alleges that defendants Rokosz, Legum, Telsey, and Royce LLC violated Section 349. (*Id.* ¶¶ 347-368.)  However, plaintiff now adds

that she was misled that the funds held in escrow would be utilized in the event of "default on taxes, insurance, or interest payments," when in reality, the escrow funds were not used for this purpose when she so requested, and instead were used to hide the true interest rate of her loan, which rendered the loan usurious.  (*Id.* ¶ 366.)

With respect to her RICO claim, plaintiff's proposed amended complaint adds that plaintiff's loan constituted "unlawful debt" under RICO § 1961(6) because, *inter alia*, "the usurious rate of the Subject Loan, of a least 37.87 percent, was at least twice the enforceable rate of 16 percent."  (*Id.* ¶ 398.)  Plaintiff also alleges that as of February 2017, the defendants were "engaged in the business of lending money at a usurious rate," and that at least the ten other loans detailed by the plaintiff, involved Defendant Rokosz and the other RICO Defendants.  (*Id.* ¶ 399.)  The proposed amended complaint details the manner in which defendants participated in the operation or management of the alleged enterprise in the collection of unlawful debt.  (*Id.* ¶¶ 400-403.)

Plaintiff's proposed amended complaint also removes defendant Hurley from the RICO and Section 349 violations. Instead, plaintiff alleges in the proposed amended complaint that Hurley committed legal malpractice, (*id.* ¶¶ 408-419,) because, *inter alia*, he "fail[ed] to exercise the care, skill,

and diligence commonly possessed and exercised by a member of the legal profession" by not informing plaintiff of the risks associated with the mortgage loan and not recognizing that the loan was suspect and "potentially dangerous to Ms. Barker." (*Id.* ¶ 413.)  Plaintiff alleges that "defendant Hurley's negligence was a proximate cause of the damages sustained by Ms. Barker."  (*Id.* ¶ 416.)

## II.  Defendant Legum's Cross Motion for Sanctions

Defendant Legum submitted an affidavit in support of his motion for sanctions pursuant to 28 U.S.C. § 1927.  (ECF No. 154-1, Legum Affidavit.)  Legum states that with respect to plaintiff's motion to amend her complaint "there is not only no good faith for the motion, there is no basis for it at all." (*Id.* ¶ 3.)  Legum also contends that the proceedings post this Court's January 2, 2020 order were "unreasonable and vexatious," and as such, "defendant [Legum] is entitled to be reimbursed for the fair value of time he expended in opposition thereto."  (*Id.* ¶ 6.)  Specifically, Legum requests that this court award costs in the sum of $54,144.00.  (*Id.* at 5-7.)

## III. Procedural History

The January 2, 2020 Memorandum and Order sets forth this case's procedural history in detail up to the date of the decision, which is incorporated by reference herein.  (ECF No. 119, Order Granting Motion to Dismiss.)  As such, this court

will review in this section the procedural history post the
January 2, 2020 Memorandum and Order.

Shortly after this court's order, plaintiff filed a
motion to amend her complaint on March 13, 2020. (ECF No. 129,
Motion to Amend.)  On March 20, 2020, Defendant Legum filed a
cross motion for sanctions.  (ECF No. 130, Cross Motion for
Sanctions.)  In response to several motions being filed in
violation of the court's motion practices, on July 17, 2020,
this court issued an order denying without prejudice both
plaintiff's motion to amend and Legum's cross motion for
sanctions as they were improperly filed.  (Dkt. Order
7/17/2020.)  On July 31, 2020, plaintiff and defendant Legum re-
filed their fully briefed motions as per this court's July 17,
2020 order.  (*See* ECF No. 152, Motion to Amend; *see also* ECF No.
154, Cross Motion for Sanctions.)

On August 5, 2020, after improperly filing a motion to
dismiss, defendant Janelle Defreitas, was ordered to file a pre-
motion letter before filing her dispositive motion.  (Dkt. Order
8/5/2020.)  On August 11, 2020, Defreitas filed a letter motion
for a pre-motion conference.  (ECF No. 165, Letter Motion.)
Plaintiff responded in opposition to Defreitas' letter on August
14, 2020.  (ECF No. 166, Reply in Opposition.)  On August 19,
2020, this court held a pre-motion conference and set a briefing
schedule for Ms. Defreitas to serve her motion to dismiss by

September 9, 2020.  (Minute Entry and Order, 8/19/2020.)  On

September 3, 2020, Defreitas filed a motion for a second pre-

motion conference.  (ECF No. 170, Motion for Second Pre-Motion

Conference.)  On October 5, 2020, this court denied Defreitas'

motion for a second pre-motion conference, and ordered that

because Defreitas did not comply with the scheduling of her

motion to dismiss by the September 9, 2020 deadline, she was

foreclosed from moving to dismiss the complaint.[3]

### LEGAL STANDARD

### I.    Rule 15(a)(2)

The court finds that plaintiff's motion to amend the

complaint is properly brought pursuant to Federal Rule of Civil

Procedure 15(a)(2) ("Rule 15(a)(2)").  Both this court and

Magistrate Judge Gold specifically granted plaintiff leave to

amend.  The leave to do so was granted pursuant to Federal Rule

of Civil Procedure 15 and not a Rule 16 scheduling order.  "Rule

15(a)(2) allows a party to amend its pleading with the court's

leave, which should be 'freely give[n] ... when justice so

requires.'" *Capital v. Pappas*, 856 F.3d 61, 88-89 (2d Cir. 2017)

---

[3] This court subsequently reviewed Defreitas' second motion for a pre-motion
conference regarding her proposed motion to dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6).  (*See* ECF No. 170, Motion for Pre-Motion
Conference.)  Defreitas' motion concerns factual disputes that are not
appropriate to consider in a motion to dismiss, and furthermore, Defreitas'
motion does not address plaintiff's claims alleged in her proposed amended
complaint, and only addresses plaintiff's claims alleged in her original
complaint.  Defreitas' motion is thus moot.  Therefore, Ms. Defreitas is
foreclosed from moving to dismiss the amended complaint.

(quoting Fed. R. Civ. P. 15(a)(2)).  The Rule embodies a "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)(internal quotation marks omitted) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)).  Although Rule 15(a)(2) provides that a party shall be given leave to amend "when justice so requires," leave to amend is not required where a proposed amendment would be futile.  *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.2011); *see also Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir.2013).

Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility...."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

## II.   28 U.S.C. § 1927

Pursuant to 28 U.S.C. Section 1927, courts have authority to sanction attorneys for "unreasonabl[e] and

10

vexatious[]" conduct and to award the other party reasonable
costs and fees.  28 U.S.C. § 1927.  The Section provides:

> Any attorney or other person admitted to conduct
> cases in any court of the United States or any
> Territory thereof who so multiplies the proceedings
> in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

*Id*.  The Second Circuit has repeatedly held that imposition of
sanctions under this section requires a showing of bad faith on
the part of the attorney.  *Schlaifer Nance & Co. v. Estate of
Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (stating that the
imposition of sanctions under 28 U.S.C. § 1927 is only
authorized when "there is a clear showing of bad faith")
(*quoting Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d
Cir. 1996)(overruled on other grounds)); *Oliveri v. Thompson*,
803 F.2d 1265, 1273 (2d Cir. 1986) ("Imposition of a sanction
under § 1927 requires a clear showing of bad faith.") (citation
and internal quotation omitted).

Thus, an award is "proper" under this Section only
"when the attorney's actions are so completely without merit as
to require the conclusion that they must have been undertaken
for some improper purpose such as delay."  *Oliveri*, 803 F.2d at
1273; *Schlaifer*, 194 F.3d at 336 (same); *see also Int'l Techs.
Mktg., Inc. v. Verint Sys., Ltd.*, No. 19-1031-cv (2d Cir. Mar.
16, 2021) (noting under Rule 11 that a court's inherent power

11

must be exercised with restraint and discretion; and should

sanction only "bad faith vexatious[], [or] wanton[]" acts

otherwise undertaken for "oppressive reasons." (citations

omitted.))

**DISCUSSION**

## I.    Plaintiff's Motion to Amend

Defendants Rokosz, Legum, Telsey, and Royce LLC object

to the proposed amended complaint, arguing that the amendment

would be futile because plaintiff has failed to cure the

deficiencies of the first complaint.[4]  (*See* ECF No. 153, Legum

Memorandum in Opposition; ECF No. 157, Rokosz Memorandum in

Opposition; and ECF No. 162, Telsey and Royce LLC Memorandum in

Opposition.)  Separately, defendant Rokosz argues that plaintiff

should not be allowed to proceed with her amended complaint

because she failed to properly file a formal motion pursuant to

Local Civil Rule 7.1(d) and plaintiff's usury-based claims are

pre-empted by the Depository Institutions Deregulation and

Monetary Control Act of 1980 ("DIDMCA").

Plaintiff also now alleges that "in the course of

Defendant Hurley's representation of Ms. Barker in the Subject

---

[4] Defendant Rokoskz makes a brief mention to being "prejudiced" by plaintiff's "refusal to [file her amendment] timely."  (*See* ECF No. 157, Rokosz Memorandum in Opposition at 15-16.)  However, as detailed in this Memorandum and Order's Discussion Section I.A., this court finds that once plaintiff was granted leave to file her motion, she properly and timely filed the motion to amend her complaint.

Loan transaction, he committed legal malpractice."  Defendant Hurley did not file a memorandum in opposition to this proposed amendment.[5]

### A. Plaintiff's Adherence to Local Civil Rule 7.1(d)

Local Civil Rule 7.1(d) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides that only "[a]pplications for extensions or adjournments, applications for a pre-motion conference, and similar non-dispositive matters as permitted by the instructions regarding ECF published on the website of each respective Court and any pertinent Individual Judge's Practices, may be brought by letter-motion...."  All other motions must be brought upon a notice of motion or order to show cause and must include a memorandum of law and supporting affidavits and exhibits.  Local Civil Rule 7.1(a).

Defendant Rokosz contends that plaintiff's filing was defective because plaintiff "filed a memorandum of law, without a notice of motion, letter motion, or letter motion seeking leave to file its motion informally as a letter motion."  (ECF No. 157, Rokosz Memorandum in Opposition at 11-13.)  At a conference on February 14, 2020, Magistrate Judge Gold discussed

---

[5] Plaintiff filed a reply to what this court can only assume is a response to defendant Hurley's affidavit in opposition to plaintiff's originally filed motion to amend.  (*See* ECF No. 161, Plaintiff's Reply RE Hurley; *See also* ECF No. 135, Hurley's Opposition to Plaintiff's Motion.)  This court will consider plaintiff's reply in its decision.

a procedure and schedule for circulating a proposed amended complaint and a motion to amend if the defendants would not consent to the amendment.  (ECF No. 127, Minute Entry, 2/14/2020; ECF No. 136, Transcript for Proceedings held on February 14, 2020.)  Thus, defendants had notice of plaintiff's motion to amend, which was first filed on March 13, 2020, (ECF No. 129, Motion to Amend the Complaint,) as scheduled by Judge Gold.  Thereafter, plaintiff advised Magistrate Judge Gold that all parties did not consent to his adjudication of the plaintiff's motion to amend.  (ECF No. 127, Minute Entry, 2/14/2020; ECF No. 128, Letter Regarding Consent to Adjudication of Motion.)  On July 17, 2020, this court terminated or denied without prejudice several motions that were filed before they were fully briefed, and set new dates for filing in logical order, the fully briefed motion to amend and defendant Legum's motion for sanctions, as required by the court's motion practices.  (Dkt. Order 7/17/2020.)  The order stated that "a revised memorandum of law conforming to this order shall be filed with the fully briefed motion for leave to amend no later than Friday, July 31, 2020."  (*Id.*)  Thus, defendants had received more than adequate notice of plaintiff's motion to amend.  Plaintiff followed the court's directive, and on July 31, 2020, filed her motion, the notice of motion, memorandum in

14

support, the proposed amended complaint, and the certificate of service.   (ECF No. 152, Motion to Amend.)

Although plaintiff originally failed to comply with the District's local rules regarding a notice of motion during her initial filing of the motion to amend, this Court granted leave for plaintiff to re-file her motion on July 17, 2020 and she properly did so.   (ECF No. 152, Motion to Amend.)   Rokosz was given notice and an opportunity to oppose the motion and has done so.   Under such circumstances, the Court will treat plaintiff's motion as a timely and properly filed motion seeking leave to amend and will address the motion on the merits.   Based on the record, the court respectfully denies the defendants' contention that they were not properly notified of the motion to amend.

### B. Whether Plaintiff's Proposed Amendments are Futile

Defendants' opposition focuses on the futility of the proposed amended claims.   An amendment is futile when the proposed new claim would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).   *Milanese v. Rust-oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see Whimsicality, Inc. v. Battat*, 27 F. Supp. 2d 456, 465 (S.D.N.Y. 1998).   "As when considering a motion to dismiss under Rule 12(b)(6), [a] court" considering a motion for leave to amend "must accept as true all well-pleaded facts" in a plaintiff's proposed amended

15

complaint "and draw all reasonable inferences in the [plaintiff's] favor." *Artists Rights Enf't Corp. v. Estate of King*, No. 16 Civ. 1121 (JPO), 2017 WL 2062988, at *3 (S.D.N.Y. May 15, 2017) (quoting *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016)).  The party opposing a motion to amend bears the burden of establishing that an amendment would be futile.  *See Blaskiewicz v. County of Suffolk*, 29 F.Supp.2d 134, 137-38 (E.D.N.Y. 1998).

### 1. Consumer-Oriented Conduct under Section 349

In this court's January 2, 2020 order, the court found that defendants' conduct was not "consumer-oriented" because plaintiff's complaint had not alleged that the "fraudulent equity-stripping scheme" targeted any consumer other than Ms. Barker.  (ECF No. 119, Order Granting Motion to Dismiss at 23.) Specifically, the court acknowledged plaintiff's attempt to characterize this scheme as widespread by referencing thirteen other mortgage loans, but signaled that the allegations did not "indicate whether or not defendants' conduct with respect to plaintiff was replicated elsewhere, or whether the other loans issued by Rokosz involved a corporate intermediary, a critical component of the Mortgage Loans issued to plaintiff." (*Id*. at 27-28.)

In her proposed amended complaint, plaintiff alleges that she was told that in order to obtain the Subject Loan, she

would be required to transfer her property to a corporation.
(PAC, ¶ 42.)  She was advised that all interest in the property
and stock in the corporation, J&M Holdings, would be held in
escrow by Defendant Legum and released to Defendant Rokosz if
plaintiff defaulted on her loan.  (*Id*. ¶ 78.)  Plaintiff alleges
that defendants were involved in arranging "at least 14 mortgage
loan transactions" that resembled that of Ms. Barker between
November 2013 and February 2017.  (PAC, ¶ 160.)  Plaintiff also
alleges that "in at least 10 of these 14 mortgage loans, an
amount of the loan proceeds was withheld as escrow by Defendant
Legum as the 'escrow agent.'"  (*Id*. ¶ 163.)  Plaintiff states
that "at least six of Defendant Rokosz's other mortgage loans
with similar terms to the Subject Loan were made to corporations
or Limited Liability Companies ("LLCs")."  (*Id*. ¶ 172.)

Plaintiff explains the intricacies of ten transactions
in her proposed amended complaint.  (*Id*. ¶¶ 179-264.)  Plaintiff
describes the events which took place for the transaction
involving property owned by Ms. Campbell at 26 Kossuth Place,
Brooklyn, New York.  (*Id*. ¶¶ 236-245.)  Similar to plaintiff's
Subject Loan transaction, Ms. Campbell's loan involved the
creation of an LLC where "all stock and interest" in the
property was placed in escrow.  (*Id*. ¶ 242.)  Plaintiff also
alleges for the loan transaction involved in property owned by
Ms. Rainford, 15 Oriole Way, Dix Hills, New York, a corporate

17

intermediary was utilized.  (*Id.* ¶¶ 250-264.)  Like Ms. Barker, Ms. Rainford was required to transfer her property to a corporate entity, Gently, LLC, and "all stock and interest" was placed in escrow.  (*Id.* ¶¶ 255, 261.)  Plaintiff also describes that in four other transactions the defendants created an LLC. (*Id.* ¶¶ 271-274).

The crux of Defendants' opposition is that plaintiff's Section 349 claim must fail because the new facts in the proposed amended complaint, which detail the defendants' wrongful acts against other individuals besides the plaintiff, "are all tailored to the unusual, if not unique circumstances of this particular borrower." (ECF No. 157 Rokosz Memorandum in Opposition at 21; ECF No. 153, Legum Memorandum in Opposition at 25.)  As the Second Circuit has noted, private contract disputes that are unique to the parties do not fall within the range of conduct proscribed by Section 349.  *See, e.g.*, *Richmond v. Nat'l Grid*, 553 F. App'x 56, 57 (2d Cir. 2014); *Schlessinger v. Valspar Corp.*, 723 F.3d 396, 398 (2d Cir. 2013) (Section 349 "is limited to those practices which may tend . . . to deceive consumers.") (internal quotations omitted).

In the proposed amended complaint, plaintiff alleges that at least fourteen loan transactions were similar to hers, and that six mortgage loans described in the proposed amended complaint were made to LLCs, (PAC, ¶¶ 160, 163, 172 360,) thus,

plaintiff's loan transaction was not unique.  Plaintiff provides details for two of these mortgage loans, 26 Kossuth Place and 15 Oriole Way, but does not provide the court with as many details regarding the four other transactions where LLCs were used. However, the Second Circuit has held that "an action under § 349 is not subject to the pleading-with-particularity requirements of [Federal Rule of Civil Procedure] Rule 9(b) ... but need only meet the bare-bones notice-pleading requirements of [Federal Rule of Civil Procedure] Rule 8(a)." *Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir.2005) (internal citations omitted).  The court finds that plaintiff has pled sufficient facts in the proposed amended complaint to state a violation of Section 349 and that amendment would not be futile.

This court finds the reasoning in *Barkley v. Olympia Mortg. Co*. instructive.  *See Barkley v. Olympia Mortg. Co*., No. 04 CV 875 RJD/KAM, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007).  In that case, the plaintiffs alleged that "defendants orchestrated all-inclusive home sales and steered plaintiffs to participating lawyers, lenders, and mortgage brokers.  Accordingly, the alleged conduct is 'consumer-oriented' for the purposes of Section 349." (*Id*. at 18.)  Similarly here, plaintiff describes that defendants engaged in behavior, which included creating a sham corporation to which the owner's interest in the property was transferred within two to seventeen days of the loan

closing.  (PAC, ¶ 358.)  Defendants allegedly "orchestrated a system of providing services under which prospective [debtors] were defrauded or misled every step along the way."  *See Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 53, 735 N.Y.S.2d 479, 760 N.E.2d 1274 (2001) (The New York Court of Appeals held that plaintiffs successfully alleged consumer-oriented conduct by pleading that defendants misled prospective buyers at every juncture and "steered buyers to mortgage bankers and attorneys who had connections to Better Homes.")

Although this court noted in its January 2, 2020 order dismissing the original complaint that a mortgage transaction was not a classic example of a Section 349 claim, (ECF No. 119, Order Granting Motion to Dismiss at 23,) the New York Court of Appeals has explained that "[t]he reach of [GBL § 349] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State."  *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 291 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999)).  Thus, courts have extended Section 349 to real estate transactions. *See Banks v. Consumer Home Mortgage,* No. 01 Civ. 8508,2003 WL 21251584, at *9 (E.D.N.Y.2003); *Canario v. Gunn,* 300 A.D.2d 332, 751 N.Y.S.2d 310 (App.Div.2002).  Here, plaintiff has shown that defendants' actions would be deceptive to the reasonable consumer in that the individuals described, along with

plaintiff, were offered unaffordable interest-only loans on the condition that they transfer their property to a sham corporation, thereby losing "all stock and interest" upon default, and resulting in a division of the proceeds among the group of defendants. *See Marcus v. A.T. & T. Corp.*, 138 F.3d 46, 63 (2d Cir.1998) (finding that the defendant's actions would be deceptive to the reasonable consumer in evaluating a Section 349 claim). This court finds that the alleged conduct by defendants was "consumer-oriented" under Section 349. As such, this court finds that the proposed amendment would not be futile and that the Section 349 claim would withstand a motion to dismiss.

### 2. RICO Allegations

Plaintiff's RICO allegation against Defendants is brought pursuant to 18 U.S.C. § 1962(c). Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . a collection of an unlawful debt." 18 U.S.C. § 1962(c). An "unlawful debt" as defined in 18 U.S.C. § 1961(6) is "(A). . .unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with

21

the business . . . lending money . . . at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.  18 U.S.C. § 1961(6); *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249 (2d Cir. 1985).  Currently under New York law, a loan to an individual bearing an interest rate higher than 16% per annum is unenforceable.  *See* General Obligations Law § 5-501(2); Banking Law § 14-a; *Cohen v. Eisenberg*, 265 A.D.2d 365, 366, 697 N.Y.S.2d 625 (2d Dept.1999); *see also Durante Bros.*, 755 F.2d at 246.  This court will address whether plaintiff's Subject Loan constituted "unlawful debt."  *See infra* I.B.2(b).

### a. Association-in-fact Enterprise under RICO

As a threshold matter, a plaintiff asserting a civil RICO claim must adequately allege the existence of either a legal enterprise or an association-in-fact enterprise.  The Supreme Court has clarified that three characteristics are required for an association-in-fact enterprise: (1) a purpose, (2) relationships among the enterprise's associates, and (3) longevity sufficient to permit said associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 944 (2009).

Plaintiff names the following RICO defendants: Rokosz, Legum, Telsey, and Royce LLC.  (PAC, ¶¶ 383-407.)  Defendant

Rokosz[6] contends that "no purpose for the enterprise is now pleaded, let alone is it pleaded how the individual members have been acting to advance the enterprise's interest as opposed to their personal interests." (ECF No. 139, Rokosz Memorandum of Law in Opposition at 23.)  In her reply, plaintiff counters that the proposed amended complaint is "replete with factual allegations about numerous transactions, in addition to the Subject Loan, through which Defendants and Fishbein worked together to achieve a common purpose, and from which their roles in the enterprise may be logically inferred." (ECF No. 160-1, Reply Memorandum in Support of Motion at 14.)

Plaintiff's Reply Memorandum cites to *Boyle v. United States*, in support of plaintiff's contention that the defendants constituted an association-in-fact enterprise under RICO. (ECF No. 160-1, Reply Memorandum in Support of Motion at 11-12.)  The Supreme Court in *Boyle* made clear that an association-in-fact enterprise, "need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times." *Boyle v. United States*, 556 U.S. 938, 948, 129 S. Ct.

___

[6] Notably, in his Memorandum in Opposition, Defendant Legum does not dispute the existence of an association-in-fact enterprise. (*See generally* ECF No. 153, Legum Memorandum in Opposition.)

2237, 2245, 173 L. Ed. 2d 1265 (2009).  Plaintiff can prove an enterprise "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Id.* at 945, 129 S.Ct. 2237 (quoting *United States v. Turkette*, 452 U.S. at 583, 101 S.Ct. 2524. (1981).

This court finds that plaintiff's enterprise allegations are sufficient to survive a motion to dismiss.  The proposed amended complaint extensively sets forth facts describing the Defendants' roles and relationships and how Defendants functioned over a period of years as an organized unit that engaged in the underlying predicate acts in working toward a common purpose, namely "to coordinate, enable, and profiteer from hard money mortgage loans, most (if not all) of which were usurious."  (PAC, ¶ 390.)  Plaintiff alleges that generally, Defendant Telsey recruited Fishbein who would bring a prospective borrower to the attention of Defendants Telsey, Legum, and Rokosz, and act as an intermediary between the borrower and defendants.  (*Id.* ¶ 165.)  Telsey and Legum communicated with Fishbein on behalf of Rokosz and themselves. (*Id.* ¶¶ 158-172, 390-394, 400-401.)  Defendants Telsey and Rokosz would visit the properties that would secure the loan. (*Id.* ¶ 167.)  Legum would assess the debt obligations and prepare the closing documents, including the escrow agreements.

(*Id.* ¶ 170.)  Defendant Telsey was responsible for ensuring that borrowers made their payments, "ultimately on behalf of and in order to keep financing flowing from Defendant Rokosz."  (*Id.* ¶ 390.)  "These allegations identify the role of each Defendant and the linkages among them."  *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 NGG RML, 2014 WL 4773991, at *17 (E.D.N.Y. Sept. 24, 2014) (finding an association-in-fact enterprise where plaintiff alleged that defendants worked as a unit for a common purpose.)

As for the enterprise operating as a "continuing unit," plaintiff alleges that the Defendants worked together "between November 2013 and February 2017" on at least 14 loan transactions, which averaged one every three months.  (PAC ¶¶ 390-391.)  Based on the extensive allegations regarding the association-in-fact enterprise, the court finds that plaintiff has sufficiently pled the existence of an enterprise consisting of defendants Rokosz, Legum, Telsey, and Royce LLC, and that the amendment as to the RICO claims would not be futile.

### b.  18 U.S.C. § 1961(6)

As noted above, *see supra* I.B.2,  an "unlawful debt" for purposes of civil RICO liability is defined as "a debt ... which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State of Federal law, where the usurious rate is at least twice the

enforceable rate." 18 U.S.C. § 1961(6)(B). Plaintiff alleges that the enterprise engaged in the collection of unlawful debt.

Plaintiff alleges that her Subject Loan was usurious because "the usurious rate of the Subject Loan, of at least 37.87 percent, was at least twice the enforceable rate of 16 percent," (PAC ¶ 398,) and alleges that defendants "engaged in the business of lending money at a usurious rate." (*Id.* ¶ 399.) Defendant Legum argues that plaintiff's RICO claim should not survive because "of the twenty-six Rokosz loans referenced in the proposed amended complaint, it is alleged that only three had interest rates more than double the usury rate." (ECF No. 153, Legum Memorandum in Opposition at 18-19.) Plaintiff contends in her Reply that she has alleged that defendants arranged five loans with usurious interest rates more than twice the enforceable rate. (ECF No. 160, Reply at 10.) This court finds that plaintiff has sufficiently alleged that in four of the ten described other loan transactions managed by defendants, the interest rates for the loans were usurious, amounting to 37.17%, 34.45%, 33.33% and 45.69%, respectively. (See PAC ¶¶ 183, 191, 204, and 264.) Therefore, in five of the loans in which defendants engaged, including plaintiff's Subject loan, described in her proposed amended complaint, the interest rates reported for each transaction were above 32%, which is more than twice the enforceable interest rate under New York Law.

Defendant Rokosz does not dispute that these particular loans had interest rates exceeding the enforceable legal rate, but instead contends that plaintiff's claims "premised upon usury are preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA")."  (ECF No. 157, Rokosz Memorandum in Opposition at 24.)  The DIDMCA preempts "the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved."  12 U.S.C. § 1735f-7a(a)(1).  In order to qualify for preemption under the statute, the lender must establish that he or she "ma[de] or invest[ed] in loans aggregating more than $1,000,000 per year."  12 U.S.C.A. § 1735f-7a.

As plaintiff correctly articulates in her Reply, Defendant Rokosz attempts to establish preemption "based on an affidavit describing his lending activities," but as this court already noted, it cannot and will not consider the affidavits and accompanying exhibits in deciding plaintiff's motion to amend the complaint.  *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (In a motion to dismiss, "we may not rely on conclusory or hearsay statements contained in the affidavits"); *see also Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000); *Kamen*

*v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).
Consequently, Defendant's preemption defense may not be
considered at this time.  The court finds that plaintiff has
pled sufficient plausible facts in the proposed amended
complaint to state a RICO claim for the collection of unlawful
debt.

### 3. Malpractice Claim against Defendant Hurley

To prevail on a claim for legal malpractice in New
York, a plaintiff must show: (1) that the attorney was
negligent; (2) that the negligence was a proximate cause of the
plaintiff's loss; and (3) proof of actual damages that were
caused by the attorney's negligence.  *Brooks v. Lewin*, 21 A.D.3d
731, 734, 800 N.Y.S.2d 695 (1st Dep't 2005).

"An action to recover damages [under New York law]
arising from an attorney's malpractice must be commenced within
three years from accrual."  *McCoy v. Feinman*, 99 N.Y.2d 295,
301, 755 N.Y.S.2d 693, 785 N.E.2d 714 (2002); *see* N.Y.C.P.L.R. §
214(6).  Typically, "this accrual time is measured from the day
an actionable injury occurs, 'even if the aggrieved party is
then ignorant of the wrong or injury.'"  *McCoy v. Feinman*, 99
N.Y.2d at 301, 755 N.Y.S.2d 693, 785 N.E.2d 714 (quoting
*Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541, 620 N.Y.S.2d
318, 644 N.E.2d 1009 (1994)).  [W]hat is important is when the
malpractice was committed, not when the client discovers it."

*Id.* (internal quotation marks omitted); *see Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7-8, 840 N.Y.S.2d 730, 872 N.E.2d 842 (2007); *Boyd v. Gering, Gross & Gross*, 226 A.D.2d 489, 641 N.Y.S.2d 108, 108 (2d Dep't 1996) ("The law is well settled that an action to recover damages for legal malpractice accrues when the malpractice is committed.").

The Subject Loan was entered into in February 2017. Plaintiff filed her original complaint on January 25, 2019. (ECF No. 1, Complaint.)  Plaintiff filed her motion to amend to add her malpractice claim against Mr. Hurley on July 31, 2020, which exceeds the three-year statute of limitations. *See Goldman v. Barrett*, 733 F. App'x 568, 569 (2d Cir. 2018) (holding that the amended complaint, filed in October 2016, alleging defamatory statements from April 2015, was presumptively barred under New York's one-year statute of limitations.)

Contrary to plaintiff's contention, the legal malpractice claim is not saved by relation back to plaintiff's original complaint.  "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir.2006).  In the instant action, plaintiff did not give notice of a

malpractice claim against Hurley in her original complaint.  In
fact, plaintiff's original complaint alleged only that Hurley
violated Section 349 and RICO, and in her proposed amended
complaint, plaintiff does not include Hurley in those
allegations.  (*See generally* PAC.)  There is nothing in the
original complaint which references a legal malpractice claim
against Hurley.  (*See* ECF No. 1, Complaint.)

Therefore, amendment would be futile as to plaintiff's
legal malpractice claim because the claim would be dismissed
pursuant to the three-year statute of limitations. *See Twersky
v. Yeshiva Univ.*, 579 Fed. Appx. 7, 12 (2d Cir. 2014) (summary
order) (finding that "the district court correctly concluded
that amendment would have been futile" where the proposed
amendments involved untimely claims); *Kassner v. 2nd Ave.
Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (affirming
dismissal of claims and denial of cross-motion to amend as to
claims that were time-barred).

## II.  Legum's Motion for Sanctions

Defendant Legum moves for sanctions against
plaintiff's counsel pursuant to 28 U.S.C. § 1927 for moving to
amend the complaint.  Plaintiff argues in opposition that
"Defendant Legum does not set forth any evidence, much less
clear evidence, to indicate that Plaintiff's motion for leave to
amend is meritless or brought in bad faith.  Plaintiff's counsel

has not multiplied the proceedings unreasonably or vexatiously
and this cross-motion for sanctions must be denied."  (ECF No.
156, Memorandum in Opposition at 3.)  In response, Legum
provides a list of "misrepresentations" included in plaintiff's
proposed amended complaint, which include Legum's involvement in
holding funds in escrow accounts and Legum's role in the "RICO
enterprise."  (ECF No. 155, Legum's Reply at 2.)

Courts use the same standard for evaluating a
sanctions claim under either 28 U.S.C. § 1927 or the court's
inherent power, and the Second Circuit has stated that "the only
meaningful difference between an award made under § 1927 and one
made pursuant to the court's inherent power is . . . that awards
under § 1927 are made only against attorneys or other persons
authorized to practice before the courts while an award made
under the court's inherent power may be made against an
attorney, a party, or both."  *Oliveri v. Thompson*, 803 F.2d
1265, 1273 (2d Cir. 1986).

Thus, "[t]o impose sanctions under either [1927 or the
court's inherent power], a court must find clear evidence that
(1) the offending party's claims were entirely without color,
and (2) the claims were brought in bad faith – that is,
motivated by improper purposes such as harassment or delay."
*Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citation
and internal quotation omitted).  "The test is conjunctive and

neither meritlessness alone nor improper purpose alone will
suffice." *Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d
383, 390 (2d Cir. 1985).  A claim is deemed "colorable" when,
viewed in light of the reasonable beliefs of the party making
the claim, it has some amount of factual and legal support.
*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-79 (2d Cir.
2000); *see also Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.
1980) (overruled in part on other grounds) ("The question is
whether a reasonable attorney could have concluded that facts
supporting the claim *might be* established, not whether such
facts actually *had been* established.") (emphasis added).

          For the second element of bad faith, the Second
Circuit has "restrictively" interpreted this standard in
determining whether certain conduct merits sanction.  *Eisemann*,
204 F.3d at 396.  Thus, the Second Circuit has noted:

> To ensure . . . that fear of an award of
> attorneys' fees against them will not deter
> persons with colorable claims from pursuing
> those claims, we have declined to uphold awards
> under the bad-faith exception absent both clear
> evidence that the challenged actions are
> entirely without color, and are taken for
> reasons of harassment or delay or for other
> improper purposes and a high degree of
> specificity in the factual findings of the lower
> courts.

*Id.* (*quoting Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*,
782 F.2d 329, 344 (2d Cir. 1986)).  For a finding of bad faith,
a court must: (i) find that the challenged actions were taken

for improper purposes, such as harassment or delay; and (ii) provide a high degree of specificity in the factual findings. *See Oliveri*, 803 F.2d at 1272.

Under the "bad faith" standard, the type of conduct found to merit sanctions in this Circuit includes:

> [R]esubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand.

*Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (*quoting Hudson Motors*, 845 F. Supp. at 978) (internal quotation marks omitted); *see also Dow Chem.*, 782 F.2d at 345 ("The appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders.").

Thus, in this Circuit, the bad faith standard is not easily satisfied and sanctions are warranted only in extreme cases. *See, e.g.*, *Revson*, 221 F.3d at 77-78 (reversing trial

court's award of sanctions despite conduct by counsel including:
(i) sending letter to defendant attorney Cinque threatening to
tarnish his reputation; (ii) publicly accusing Cinque of fraud
without any concrete evidence to support the claim; (iii)
threatening to send a letter to the court accusing Cinque of
criminal conduct if he did not capitulate to [the plaintiff's]
demands; and (iv) repeatedly attacking Cinque in an offensive
and demeaning fashion) (internal citations and quotations
omitted); *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E.
80th St. Equities)*, 218 F.3d 109, 115-17 (2d Cir. 2000)
(imposing sanctions when the party in the prior bankruptcy
proceedings "clearly lacked standing," then appealed the
decision of the Bankruptcy Court despite that court's warning
that such an appeal was meritless, and then, on appeal before
the District Court, made claims having "absolutely nothing to do
with the merits of his case" and "disparaged and made
unsubstantiated allegations impugning the integrity of the
Bankruptcy Court"); *Oliveri*, 803 F.2d at 1276-78 (imposition of
sanctions reversed and no bad faith found despite District
Court's holding that the Plaintiff was "unworthy of belief and
[that] his testimony was incredible") (internal quotations
omitted).

### A.  Colorability

Here, regardless of the ultimate merits of plaintiff's claims, there "is no evidence to suggest that the [plaintiff or her attorney] had utterly no basis for [her] subjective belief in the merits of their case." *See Schlaifer*, 194 F.3d at 340-41. Accordingly, the claims alleged by plaintiff's counsel cannot be deemed entirely colorless and are sufficient to state a claim. *Cf. Mone v. Comm'r*, 774 F.2d 570, 574-75 (2d Cir. 1985) (imposing sanctions and holding that "the utter irrelevance of [counsel's] arguments on behalf of [his client] in this appeal constituted unreasonable and vexatious litigation" where the asserted claims had not a "scintilla of legal merit").

### B. Bad Faith

Similarly, under the second element, the court cannot find with the required high degree of factual specificity that plaintiff's attorney's decisions were "so completely without merit as to require the conclusion that [they] must have been undertaken for some improper purpose such as delay" giving rise to an inference of bad faith. *Oliveri*, 803 F.2d at 1273.

Mr. Legum states that plaintiff's motion to amend was brought in "bad faith" and Legum has been "stigmitized by the litigation . . . [and] abused by it." (ECF No. 154-2, Memorandum in Support of Cross Motion for Sanctions at 7.) The court does not find that plaintiff's claims are "so

completely without merit as to require the conclusion that they must have been undertaken [in bad faith] for some improper purpose." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000).   Further, the court finds no basis to conclude that plaintiff had any ulterior or improper motive for filing the motion to amend her complaint. *See Keller*, 55 F.3d at 99 (finding no bad faith despite counsel's "frustrating . . . manner of conducting negotiations" over settlement agreement where counsel appeared to have had a bona fide belief in her demands and it did not appear that the attorney had "any ulterior motive for insisting on different language" in the agreement).

Under these facts, the court does not conclude with the required high degree of factual specificity that plaintiff or plaintiff's counsel acted in bad faith.   *See, e.g.*, *Dow Chem.,* 782 F.2d at 344 (rejecting district court's finding that because counsel's actions "put innocent parties to substantial legal expense" justice required award of attorneys' fees because it amounted to no more than a restatement of criticisms of the American Rule and did not provide sufficient factual support for finding of bad faith or create entitlement to sanctions).

For the foregoing reasons, defendant Legum's motion for sanctions is denied.

<u>**CONCLUSION**</u>

For the reasons explained above, plaintiff's motion to amend or supplement the complaint is granted in part as amendment would not be futile as to plaintiff's Section 349 and RICO claims.  However, plaintiff's malpractice claim against Hurley would be futile because the claim is barred by the statute of limitations and does not relate back.  Legum's motion for sanctions is denied, and the court further declines to impose sanctions.  The parties are ordered to resume discovery under the supervision of Magistrate Judge Reyes.

**SO ORDERED.**

Dated: March 18, 2021
       Brooklyn, New York

                              /s/
                   _____
                   **KIYO A. MATSUMOTO**
                   United States District Judge
                   Eastern District of New York