

100 William Street, 6th Floor
New York, NY 10038
Tel 212-417-3700
Fax 212-417-3890
www.mobilizationforjustice.org

**VIA ECF**

February 4, 2022

The Honorable James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Barker v. Rokosz, et al.*, 19 Civ. 00514 (KAM) (JRC)

Dear Judge Cho:

My office, along with Richman Law & Policy, represents Plaintiff Carla Barker in the above-referenced action. We write pursuant to the Court's January 25, 2022, Minute Entry, Rule 37 of the Federal Rules of Civil Procedure, and Local Civil Rules 37.1 and 37.3, to request an order compelling Defendant Izia Rokosz to produce responsive documents and amend his deficient responses to Plaintiff's Requests for Admission and awarding Plaintiff fees and costs. The parties have extensively met and conferred on these issues, including several telephonic conferences and the exchange of numerous letters and attempts to narrow and revise requests and supplement responses. Despite these efforts, as well as the Court's October 13, 2021, order for Rokosz to produce certain documents about four loan transactions, the parties have been unable to resolve several outstanding discovery issues.

### I.    Background

    **A.  Factual Background**

Ms. Barker, a 54-year-old Afro-Caribbean home health aide, is at risk of losing her home of over 35 years in East Flatbush, Brooklyn because of a deceptive equity-stripping scheme orchestrated by Defendants Izia Rokosz and Steven G. Legum, who together with the remaining co-Defendants, induced her to transfer her title to a sham limited liability company (LLC) and enter into an illegal, high-cost mortgage loan, with the intent to evade consumer protection laws and strip her home of equity. (*See generally* First Amended Complaint (FAC), DE No. 174.)

When Ms. Barker entered into a hard money loan agreement with Defendant Rokosz in 2017, she was recovering from cancer, unemployed, and in financial distress. (FAC ¶¶ 28-30.) Despite her lack of income, Rokosz issued a $450,000 loan to her upon the condition that title to her home was transferred to an LLC. (*Id.* ¶ 41.) Defendants did not assess Ms. Barker or her purported business entity's ability to repay the loan. (*Id.* ¶¶ 76, 102, 161.) The terms of the subject loan were unconscionable: a 12 percent rate, interest-only monthly payments of $4,500, and a one-year term, meaning the entire principal balance of $450,000 would become due within one year. (*Id.* ¶ 303.) Ms. Barker was also required to assign all "stock and interest" in the sham LLC directly to Defendant Rokosz, with the assignment to be held in escrow by Defendant Legum. (*Id.* ¶¶ 72,

99.) More than half of the $450,000 of loan proceeds were disbursed to the Defendants named in Ms. Barker's complaint in the form of hidden finance charges, such as $60,192.68 in "escrow funds" held by Defendant Legum. (*Id.* ¶¶ 101, 118.) As a result, the undisclosed APR of Ms. Barker's loan was 37.87 percent—more than twice the legally enforceable rate of 16 percent under New York law.

Since 2011, Defendants Rokosz and Legum have collected fees and interest on at least 22 other hard money loans, with Defendants Telsey and Royce LLC collecting fees and acting as Defendant Rokosz's agent in more than half of those transactions. (FAC ¶ 4.) Despite carrying nominal interest rates of between 12 and 14 percent, most of these loans were usurious due to illusory, undisclosed finance charges. (*Id.* ¶¶ 5-6.)

### B. Procedural and Discovery Background

Ms. Barker brings claims against Rokosz under the Truth in Lending Act ("TILA"), Home Ownership and Equity Protection Act ("HOEPA"), New York Banking Law § 6-*l*, and usury laws. (FAC ¶¶ 268-339.) Ms. Barker alleges that all Defendants violated New York General Business Law Section 349 ("GBL § 349"). (*Id.* ¶¶ 340-75.) Ms. Barker also alleges that Defendants Rokosz, Legum, Telsey, and Royce LLC participated in an association in-fact enterprise engaged in the collection of an unlawful debt in violation of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.* ¶¶ 376-400)

On January 2, 2020, Judge Matsumoto granted Defendants' motion under Rule 12(b)(6) to dismiss Ms. Barker's GBL 349 and Civil RICO claims. (DE No. 119.) On July 31, 2020, Ms. Barker sought leave to amend her complaint to replead these claims, add a malpractice claim, and provide further support based on evidence obtained in discovery thus far. (DE No. 152.) On March 18, 2021, Judge Matsumoto granted Ms. Barker's motion to amend, in part, finding that the GBL § 349 claim was adequately supported by Ms. Barker's allegations of at least fourteen other loan transactions with terms that were similar to Ms. Barker's, and that at least six other mortgage loans were similarly made to sham LLCs, rendering such action "deceptive to the reasonable consumer" and therefore "consumer-oriented." (DE No. 173 at 18-20.) The Court also determined that the RICO claim would not be futile, finding that Ms. Barker properly alleged an association-in-fact enterprise because the FAC set forth facts "describing Defendants' roles and relationships and how Defendants functioned over a period of years as an organized unit . . . working toward a common purpose." (*Id.* at 24.) The Court also determined that Plaintiff sufficiently pled the underlying predicate act of collection of an unlawful debt based in part on allegations that Defendants Rokosz and Legum were involved in at least four other usurious mortgage transactions where the rate was more than twice the enforceable rate, in addition to Plaintiff's. (*Id.* at 26-28.)

Since the Court's order on Plaintiff's motion to amend, Plaintiff has served document requests as well as interrogatories and requests for admission on Rokosz and Legum to obtain further evidence in support of her claims and to rebut Rokosz's primary defense under the Depository Institutions Deregulation and Monetary Control Act ("DIDMCA"). Plaintiff served Legum and Rokosz with her Third Set of Requests of Production of Documents ("RFPs") on April 30, 2021, seeking the same universe of documents from both defendants.[1] On June 1, 2021, Legum produced an incomplete set of certain responsive documents. On August 9, 2021, Rokosz simply

---

[1] Exhibit A (Defendant Rokosz's Responses and Objections to Plaintiff's Third Set of Requests for Production, dated June 30, 2021).

re-served Legum's document production with new Bates numbers. On September 1, 2021, Rokosz produced certain email communications in his possession. Neither Defendant produced, however, key financial records sought by Plaintiff's Third RFPs, including "all documents and communications concerning the disbursement, distribution, escrow, and/or withholding of any funds comprising all or part of the Loan" and "all documents and communications concerning any payments made." (RFP Nos. 1-8, Exhibit A.)

Rokosz's initial position was that he had no independent records related to the loans, an implausible claim given his role as the mortgage lender. After Legum stated to Plaintiff that he had no bookkeeping records and otherwise no additional records beyond what he already produced, Plaintiff was forced to serve third-party subpoenas on certain banks to obtain them. After Plaintiff served the subpoenas, Legum informed Plaintiff that he had the documents sought by the subpoenas. The Court then quashed the subpoenas based on this representation (Minute Order dated 10/1/2021.) However, Legum still failed to produce the documents sought by the subpoenas. Plaintiff then raised the deficient production and both Defendants' failure to comply with their discovery obligations with the Court. On October 13, 2021, the Court ordered Rokosz (or to the extent the records were in possession of Legum) to produce documents responsive to RFP Nos. 1-8 for four particular loan transactions. (Minute Order dated 10/13/2021, the "October 13, 2021 Order.") As the mortgage lender, Rokosz should unquestionably have possession, custody, or control of these documents. Despite this clear order from the Court, Rokosz has still not produced responsive documents (nor has Legum). Rokosz now claims some of the document requests are "cumulative," yet the financial documents requested are not cumulative or duplicative of any documents already produced or otherwise available to Plaintiff.

## II. Rokosz Has Failed to Comply with His Discovery Obligations.

Rokosz should be compelled to produce responsive, nonprivileged documents to Plaintiff's RFP Nos. 1, 2, 3, 4, 5, 6, 7, and 8. Rokosz should also be compelled to amend his deficient responses to Plaintiff's RFA Nos. 2, 4, 5, 6, and 7, which Plaintiff served on December 1, 2021, consistent with the Court's guidance to resolve outstanding discovery disputes.

### A. Plaintiff's Requests for Production of Financial Documents Related to Four Particular Loan Transactions.

Plaintiff's RFP Nos. 1 through 8 seek documents and communications related to residential mortgage loans issued by Defendant Rokosz, including all transactions involving a Co-Defendant since January 1, 2012. These documents are probative of Plaintiff's GBL § 349 claim, which alleges that Defendants deceptively utilized "escrow funds" and other hidden finance charges in order to inflate the principal balance of loans, charge interest on amounts that were not actually loaned to the borrower, and to hide the true interest rate. (FAC ¶ 359.) For at least ten other loans other than Plaintiff's, these practices resulted in usurious loans with rates that were much higher than the rates disclosed to borrowers.[2] Although Plaintiff "need not show that the defendant committed the complained-of acts repeatedly," to prove a GBL § 349 claim, she must "demonstrate the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995). One way to establish

---

[2] Based on documents obtained through limited discovery, Plaintiff alleged in her FAC that at least ten other mortgage transactions involving Defendants Rokosz, Legum, Telsey, Royce LLC, Fishbein, and Jackie Marketing LLC all carried usurious interest rates ranging from 17.61 to 45.69 percent despite having nominal interest rates of 12 to 14 percent due to deceptive finance charges. (FAC ¶¶ 5; 172-257.)

a broader impact is by demonstrating that Defendants' practices could "easily recur." *See M&T Mortg. Corp. v. White*, 736 F.Supp.2d 538, 571 (E.D.N.Y. 2010). Here, the documents Plaintiff has requested will bear on whether the practice could easily recur because they demonstrate a pattern of conduct.

The documents are also probative of Plaintiff's RICO claim, which alleges that Defendants participated in an association-in-fact enterprise under RICO and engaged in the collection of unlawful debt. (FAC ¶¶ 377-78.) To establish a collection of "unlawful debt," Plaintiff must show that her mortgage loan (1) carried an interest rate of twice the enforceable rate of 16 percent, and (2) was incurred in in connection with the business of lending money at usurious rates. *See* 18 U.S.C. § 1961(6); *Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 249 (2d Cir. 1985) (establishing "business of lending money . . . at a [usurious] rate" is a distinct element from establishing that the unlawful debt at issue is "at least twice the enforceable rate"). Plaintiff has obtained evidence to support her claim that her mortgage loan carried a rate of at least 32 percent, or twice the enforceable rate of 16 percent. 18 U.S.C. § 1961(6). Plaintiff has also appropriately sought further evidence to establish whether Defendants were engaged in "the business of lending money" at usurious rates. The documents sought will permit accurate interest calculations, establishing whether Defendants have issued other usurious mortgage loans and therefore engage in "the business of lending money at a usurious rate."

Finally, the documents are probative of Rokosz's DIDMCA defense, which "applies only to creditors who make or invest in residential real estate loans aggregating more than $1,000,000 per year." *Brown v. Inv'rs Mortg. Co.*, 121 F.3d 472, 477 (9th Cir. 1997). Rokosz's defense will rise or fall on evidence demonstrating how much he has invested in mortgage loan transactions, particularly in transactions made with co-lenders.[3]

Rokosz's objections to producing documents are all meritless. *First*, for the reasons discussed above, his relevance objections fail because Plaintiff's document requests bear directly on key claims and defenses of the parties in this action. *Second*, Rokosz's "fishing expedition" objection is baseless because the Court *already* ordered Defendant Rokosz to first produce records for four discrete transactions aside from Plaintiff's. (Tr. 10/13/21, 25:15-17 ["I guess we're going to have to take baby steps here. Let's get these records for the four transactions."].) Discovery that this Court has ordered produced cannot in good faith be characterized as a "fishing expedition."[4]

*Third*, Rokosz's cumulativeness objections are meritless. The financial documents requested for these four transactions are not cumulative or duplicative of any documents already produced or otherwise available to Plaintiff. On the issue of Rokosz's funding of the loans, the mortgage documents already produced by Legum do not specify how much each lender contributed. For example, one of the four transactions includes a co-lender, and Rokosz claims he funded fifty percent of the principal balance. However, as evidence to corroborate this, Rokosz has only offered his own self-serving affidavit. (DE No. 158.) But Plaintiff is entitled to the

---

[3] Plaintiff accordingly sought "all documents and communications concerning the disbursement, distribution, escrow, and/or withholding of any funds comprising all or part of the Loan" and "all documents and communications concerning any payments made." Plaintiff has clarified to Rokosz that to calculate the APR of these mortgage loans, it is necessary to corroborate all disbursements made at the loan closings, the withholding and repayment of any escrow funds, and the receipt and application of any monthly payments where escrow was purportedly returned based on payments made by the borrower. *See* 12 C.F.R. § 1024, App'x J (detailing calculation of APR).

[4] This Court has previously warned Rokosz that "further failure to follow Court Orders may result in sanctions." (Minute Entry dated 10/6/2021).

*documents* underlying Rokosz's assertions, not just his assertions about what those documents say. Rokosz has yet to produce documents reflecting the amount each individual lender invested, which is the relevant question under DIDMCA. On the issue of the disbursement of loan funds, as Plaintiff has explained, to the extent Rokosz relies on fund disbursement sheets already produced, these are insufficient to corroborate loan disbursements. Plaintiff has already observed and shared that documents Defendants have produced as "fund disbursement sheets" have not necessarily added up, necessitating the need to verify check images. (Tr. 10/13/21, at 26:3-6.) In fact, once Legum finally produced check images for Plaintiff's loan, it was clear that the check images/bank statement did not match the fund disbursement sheet.

*Finally*, Defendants have presented conflicting information about what financial records are in their possession, custody, or control, suggesting a concerted effort to obstruct and delay Plaintiff's ability to obtain necessary discovery. Rokosz previously indicated that he only withheld records reflecting payments. (Tr. 11/12/21, 11:9-11 ["MR. DOBERMAN: The only documents that I haven't given . . . are bank statements reflecting payments made on these loans after the fact."].) Yet Rokosz and Legum have both indicated to Plaintiff that the other party possesses documents reflecting loan funding. (Tr. 12/20/21, 26:12-15 ["MS. LUU: . . . we've asked for this [funding] information from both Defendants. And they've both indicated that they don't have the documents and that they would be in the possession of the other Defendant."].)[5] These statements are implausible given that Rokosz and Legum, as the lender and lawyer for these transactions, *must* have these documents.

To put to rest whether Rokosz maintains certain bookkeeping records, Plaintiff asked Rokosz to simply admit that he does not keep certain records. As discussed *infra*, II.D., Rokosz's "denial" that he does not keep certain records is squarely inconsistent with his position that he has no possession of these documents. Moreover, to the extent that any responsive documents are in Legum's possession as his attorney, Rokosz unquestionably maintains control over such documents and is able to obtain them from Legum and produce them. *See Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020) ("'control' does not require that the party have legal ownership or actual physical possession of the documents at issue. . . .").

**B. Plaintiff's Requests for Admission Related to Plaintiff's Loan.**

Plaintiff also moves to compel amended responses to certain RFAs.[6] Plaintiff's RFA No. 5 bears on Plaintiff's TILA and HOEPA claims against Rokosz, as well as his DIDMCA defense, to which Defendant is only entitled to if he is a TILA creditor. *See* 12 U.S.C. § 1735f-5(b)(2)(D).

---

[5] Plaintiff also lacks a clear record of what Rokosz has withheld. On June 30, 2021, Rokosz served blanket objections to Plaintiff's RFPs, with no document production attached. Subsequently, on August 9, 2021, Rokosz re-served Plaintiff with Legum's exact document production, with his own Bates numbers. Plaintiff has attempted to piece together supplemental requests and requests for admission based on statements made by counsel during telephonic meet and confers. The Court has noted the difficulties that Rokosz's lack of clarity has presented. (Tr. 11/12/21, 10:16-21 ["If, in fact, you are withholding certain documents because you don't think they're relevant or not germane to this case . . . I think they need to know that. I think one reason why this has been such a moving target is because they don't know what is being withheld, right?"].)

[6] Exhibit B (Defendant Rokosz's Responses and Objections to Plaintiff's Requests for Admission, dated January 3, 2022).

As a TILA creditor, Rokosz must have provided borrowers with a series of notices or disclosures required under TILA. 15 U.S.C. §§ 1635, 1638.[7]

Rokosz denies this RFA "because it assumes Plaintiff had rights under TILA for which [Defendant Rokosz] was obligated to provide notices," which fails to comply with Fed. R. Civ. P. 36(a)(4) and (5) because it does not "fairly respond to the substance of the matter" and improperly assumes a condition that is not required for Rokosz to respond. Whether Rokosz *provided* TILA notices to Plaintiff is a *factual question* whereas whether he *was obligated to provide* such notices is a *legal question* not at issue in the RFA. There is no question that Rokosz's answer to the factual question will narrow the triable issues in the case regarding Plaintiff's TILA cause of action.[8] Rokosz either provided such disclosures or did not.

### C. Plaintiff's Requests for Admission Related to Other Borrowers.

Plaintiff's RFA Nos. 2, 4, and 6 seek admissions related to Rokosz's conduct with respect to other borrowers to determine whether they were treated similarly to Plaintiff.[9] These RFAs bear on Plaintiff's GBL § 349 claim because they will demonstrate whether Plaintiff is or is not a "uniquely situated consumer" and whether Rokosz's conduct could "easily recur." As set forth *supra*, II.A., Plaintiff alleges that Defendants did not disclose the true cost of credit under TILA, resulting in interest rates that were much higher than the rates disclosed to borrowers due to hidden finance charges and improper "escrow" holdbacks. Plaintiff also alleges that Defendants "did not request or review the financials of any of these borrowers, or otherwise assess their ability to repay the loans." (FAC ¶ 356.) Such practices are deceptive because they exploit financially distressed homeowners. Mortgage lending without regard to ability to repay leads to unaffordable mortgages and high rates of default and foreclosure—a result that Congress specifically sought to curtail after the 2008 mortgage crisis.[10] Furthermore, to the extent that Rokosz has complied with TILA, HOEPA, and NY Banking Law § 6-*l* in transactions with other borrowers, such evidence bears on whether any evasion of these consumer protection statutes in Plaintiff's case was intentional, and therefore bears on the scope of available remedies. *See* N.Y. Banking Law § 6-*l*; *see also VFS Lending JV II, LLC v. Krasinski*, 196 A.D.3d 720 (N.Y. App. Div. 2021) (voiding loan as a remedy due to intentional violation of § 6–l(10)).

Defendant Rokosz neither admits or denies RFA Nos. 2, 4, and 6, and his responses therefore fail to comply with Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."). Plaintiffs RFA Nos. 2, 4, and 6 are properly drafted and straightforward, such that each fact can easily "be admitted or denied without explanation." *Siani v. Suny Farmingdale*, No. 09-CV-407

---

[7] Notices required under TILA include, prior to Plaintiff's loan closing, (1) two copies of a notice of the borrower's right to rescind the loan, 15 U.S.C. § 1635(a); and (2) written disclosure of the cost of credit, in the form of certain important terms such as the amount financed, finance charge, APR, total payment over the life of the loan, and payment schedule. 15 U.S.C. § 1638(a).

[8] "FRCP 36 admission is intended to serve as unassailable statement of fact that narrows triable issues in case." *Howell v. Maytag*, 168 F.R.D. 502, 504 (M.D. Pa. 1996) (citations omitted). Hence, if Rokosz properly answers RFA No. 5, the triable issues regarding TILA can be narrowed.

[9] To address Rokosz's concerns over the scope of RFA Nos. 2, 4, 6, Plaintiff offered to narrow the scope of the requests to identify specific borrowers that have already been identified in this litigation. (DE 234-2 [Plaintiff's 1/11/2022 Deficiency Letter to Defendant Rokosz].) Rokosz did not respond to Plaintiff's narrowed requests.

[10] Ability-to-Repay and Qualified Mortgage Standards Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 6408, 6415 (Jan. 30, 2013).

(WDW), 2009 WL 3254924, at *1 (E.D.N.Y. Oct. 7, 2009). Rokosz must properly respond to them consistent with Rule 36.

### D. Plaintiff's Request for Admission Related to Defendant Rokosz's Bookkeeping Records.

Plaintiff's RFA No. 7 seeks an admission that Rokosz does not keep any bookkeeping records related to the funds disbursed or escrow retained for any mortgage loan transactions in which he is the lender. Plaintiff served this RFA to determine whether Rokosz maintains the referenced records, which are probative of Plaintiff's GBL § 349 and RICO claims because they bear whether other mortgage loan transactions carried hidden finance charges and usurious interest rates that were much higher than the rates that were disclosed to borrowers. The records are also necessary to corroborate disbursements made and escrow withheld, in order to accurately calculate the APR of each loan. The underlying documents thus bear on whether Plaintiff was a "uniquely situated consumer" under a GBL § 349 analysis, and whether Defendants have issued other usurious mortgage loans and therefore engage in "the business of lending money at a usurious rate" under RICO.

Rokosz's relevance objection is meritless for the reasons discussed above and his undue burden objection is also meritless. He claims answering RFA No. 7 "seeks to force [Defendant] to 'conduct a wide-ranging review' of all records related to these mortgage loan transactions," but this is not true. The RFA requests a simple admission or denial as to whether Rokosz maintains certain records. Moreover, Defendant's "denial," which is subject to his above meritless objections, is insufficient. "A denial must fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4). Here, Rokosz's denial is inconsistent with his position that he does not have any of the underlying responsive documents in his possession, custody, or control. *See* (Tr. 11/12/21, 11:9-11 ["MR. DOBERMAN: The only documents that I haven't given . . . are bank statements reflecting payments made on these loans after the fact."].) Rokosz must either admit or deny that he has these bookkeeping records. To the extent that he maintains a denial, which would be inconsistent with his prior statements, he must identify the bookkeeping records that he does have.

### III. Plaintiff Should Have an Opportunity to Review Rokosz's Production and Make an Additional Showing for Additional Financial Records Related to Other Transactions.

On October 13, 2021, after the discovery hearing, the Court ordered that Rokosz and Legum produce documents by October 27 regarding four loan transactions. (Minute Entry dated 10/13/21.) After production of these financial records, Plaintiff could obtain additional financial records regarding additional transactions if she could first "make a showing as to their relevance." (*Id.*) Plaintiff has not been afforded the opportunity to make such a showing because Rokosz has failed to produce the first set of documents regarding the four loan transactions in response to the Court order and has failed to comply with his discovery obligations.

Accordingly, Plaintiff requests that the Court permit her an additional period of time before discovery closes to (a) review the documents, once produced, regarding the four loan transactions, (b) determine whether she can make the additional showing to obtain additional financial records, and (c) make that showing, if appropriate, to obtain additional documents related to other transactions. Plaintiff's impairment in being able to make that showing constitutes good cause for a brief further discovery period.

## IV. **Plaintiff is Entitled to Fees Incurred in Making This Motion Under Rule 37(a)(5).**

Plaintiff is entitled to fees and costs incurred in seeking this discovery and making this motion to compel. Rokosz has engaged in flagrantly obstructionist conduct that has delayed discovery and prejudiced Plaintiff's ability to make an additional showing for additional documents bearing directly on her claims. Rule 37(a) monetary sanctions are "appropriate as a disciplinary measure to ensure that a party will not benefit from its own failure to comply with discovery." *Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002). Rule 37(a)(5)(A) allows for a party who has filed a successful motion to compel to seek the "reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Here, none of these exceptions apply. Rule 37(b)(2) provides sanctions where a party disobeys a court order. Here, Rokosz has disobeyed the Court's October 13, 2021 order to produce documents regarding four loan transactions.

### A. **Plaintiff Has Made Good-Faith Efforts to Avoid Court Intervention.**

Plaintiff has fulfilled her obligation to "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). Plaintiff's prior motions to compel (DE Nos. 208, 218), both reveal a history of good-faith attempts to resolve discovery disputes with Rokosz, including Plaintiff sending several deficiently letters and emails, and numerous meet-and-confer sessions.[11] Plaintiff has also offered to narrow and clarify discovery requests to address Rokosz's objections and concerns, to the extent they were communicated to Plaintiff. On January 14, 2022, counsel Plaintiff and Rokosz met and conferred by telephone to resolve issues before the January 25, 2022 discovery conference. During this call, Rokosz refused to work towards any sort of compromise on the outstanding discovery matters. In fact, he advised Plaintiff's counsel to "make a motion" on these issues since his stance was not going to change.

### B. **Rokosz's Unresponsiveness is Not "Substantially Justified."**

"There is no bright line standard for 'substantial justification,' and courts must use discretion when deciding whether opposition to a motion to compel is substantially justified." *Foxley Cattle Co. v. Grain Dealers Mut. Ins. Co.*, 142 F.R.D. 677, 679 (S.D. Iowa 1992) (citing *Cuno, Inc. v. Pall Corp.*, 117 F.R.D. 506, 509 (E.D.N.Y.1987)). Where defendants "raise[] general and specific objections to nearly all" discovery requests, despite the fact that "[m[ost, if not all of the requests seek the disclosure of documents that are relevant to plaintiffs' claims, or at the very least are likely to lead to the discovery of admissible evidence," courts will not find those objections as "substantially justified." *Patsy's Italian Rest., Inc. v. Banas*, No. 06-CV-0729(DLI)(RER), 2006 WL 2620639, at *3 (E.D.N.Y. Sept. 12, 2006).

Here, Rokosz refuses to produce documents regarding other transactions, even though Plaintiff needs that information to show a pattern of conduct for her GBL § 349 claim and the

---

[11] Notably, both previous Motions to Compel mention incidences where Defendant Rokosz was unresponsive to Plaintiff's communications. See DE No. 208 at 1 n.1 and DE No. 218 at 1 n.1.

Court *already ordered Rokosz to produce documents regarding four loan transactions. See supra* II.A. Rokosz also has not produced documents that Plaintiff needs to make APR calculations, the results of which will reveal if the interest rates at issue are usurious. As explained above, establishing that the loans at issue contained usurious rates is necessary to Plaintiff's RICO claim. Finally, Rokosz has not produced documents relevant to Plaintiff's TILA claim and his DIDMCA defense. *Id*.

The standard for determining if a party's unresponsiveness was "substantially justified" is the "reasonableness" of the party's basis for the non-disclosures. *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995). In this case, Rokosz's positions are unreasonable because (a) he is withholding evidence squarely related both to Plaintiff's claims *and his own defense*, (b) he has not been in compliance with the Court's October 13, 2021 order ordering him to produce these documents, (c) he has obstructed Plaintiff's ability to obtain these documents by feigning confusion and offering contradictory answers and discovery responses as to whether he has possession, custody, or control of relevant documents, and (d) has failed to engage with Plaintiff's good-faith attempts to narrow and compromise on these issues by telling Plaintiff to "make a motion."

### C. The Award of Expenses is Just.

"Ordinarily, in determining awards of attorneys' fees, the court is required to calculate the 'presumptively reasonable fee' by the 'lodestar' method, which entails determining the number of hours reasonably expended on the litigation and multiplying that figure by a reasonable hourly rate." *Staten v. Waldorf Properties Grp., LLC*, No. 14-cv-5947 (JBW) (VVP), 2016 WL 4203477, at *1 (E.D.N.Y. Aug. 9, 2016) (granting attorney's fees related to a successful motion to compel). The only consideration here is if there "exist any circumstances that would make an award unjust." *Id*. In this case, there are no such circumstances.

When determining what circumstances would be "unjust," "courts have recognized that the concept is flexible, largely fact dependent, and vested in the discretion of the court." *Reichel Foods, Inc. v. Proseal Am., Inc.*, No. 19-cv-02604 (ECT) (KMM), 2021 WL 4199371, at *2 (D. Minn. Sept. 15, 2021). Reasonable confusion or uncertainty over discovery obligations has been considered a reason why an award of fees on a motion to compel would be unjust. *Id*. Here, though, Plaintiff has repeatedly clarified discovery terms and narrowed the scope of requests to avoid any confusion or uncertainty. In fact, Plaintiff has been proactive in responding to Defendant Rokosz's claims of vagueness or ambiguity. None of the Rule 37(a)(5)(A) exceptions apply here.

In conclusion, Plaintiff's motion to compel should be granted and attorney's fees should be awarded since none of the Rule 37(a)(5)(A) exceptions apply here.

### V. Conclusion

For these reasons, Plaintiff's motion to compel and request for fees and costs should be granted. Plaintiff seeks documents and admissions that are plainly relevant to her claims and Rokosz's defenses but has been stymied by Rokosz at every turn, despite numerous attempts to meet and confer, offers to compromise, and a clear and unequivocal order by the Court to produce certain documents. Rokosz has no plausible justifications for his failure to comply with his discovery obligations and the Court's order. Given Rokosz's insistence that Plaintiff "make a motion" instead of simply working with Plaintiff to reach a resolution, Plaintiff should be awarded

reasonable expenses incurred in making this motion, including attorney's fees, pursuant to Rule 37(a)(5).

Respectfully Submitted,

*/s/ Michael N. Litrownik*
    Michael N. Litrownik


cc:    All Counsel of Record (by ECF)