# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
CARLA BARKER,

                    Plaintiff,

          -against-

IZIA ROKOSZ,

                   Defendant.
-----------------------------------------------------------------X

:   **Case No.: 1:19-cv-00514**
:
:   **DISTRICT JUDGE**
:   **KIYO A. MATSUMOTO**
:
:   **MAGISTRATE JUDGE**
:   **JAMES R. CHO**
:
:
:

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT-COUNTERCLAIMANT
<u>IZIA ROKOSZ'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………. iii

PRELIMINARY STATEMENT…………………………………………………………... 1

FACTUAL BACKGROUND……………………………………………………………… 2

ARGUMENT

      I: SUMMARY JUDGMENT AS TO FORECLOSURE SHOULD BE GRANTED... 5

      II: THE DEFENSES TO FORECLOSURE SHOULD BE DISMISSED……………. 6

         1.  The R.P.A.P.L. §§ 1303, 1304, and 1306 Defenses Are Inapplicable…… 7

         2.  The TILA and HOEPA Claims/Defenses Are Inapplicable……………… 9

         3.  The Banking Law § 6-l Claim/Defense Is Inapplicable…………………. 13

         4.  The Usury Claim/Defense Is Inapplicable……………………………... 14

CONCLUSION…………………………………………………………………….. 18

# TABLE OF AUTHORITIES

**Cases**

650 Brooklyn LLC v. Hunte, 47 Misc. 3d 885,
3 N.Y.S.3d 909 (Sup. Ct. Kings Cty. 2015)……………………………….......................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)…………………………………….. 5

B&B Capital Group 26 Llc v. Ctg Holding Group Llc,
2022 Fla. Cir. LEXIS 1169 (Fla. Cir. Ct. March 7, 2022)…………………………………… 10

Brown v. Inv'rs Mortg. Co., 121 F.3d 472 (9th Cir. 1997)……………………………………… 17

Campaign v. Barba, 23 A.D.3d 327 (2nd Dep't 2005)…………………………………………... 6

Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.,
198 F. Supp. 3d 171 (E.D.N.Y. 2016)…………………………………………………………….. 15

Friedman v. Maspeth Fed. Loan & Sav. Ass'n, 30 F. Supp. 3d 183 (E.D.N.Y. 2014)…………. 10

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2nd Cir. 2004)……………………………… 8

Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409 (E.D.N.Y. 2018)…………………………... 6

Hotel Employees and Restaurant Employees Int'l Union Local 54 v. Elsinore Shore Assoc.,
173 F.3d 175 (3rd Cir. 1999)………………………………………………………………………… 11

Imperatore v. Putnam Lovell NBF Sec. Inc., No. 05 CV 4966 (RPP),
2006 U.S. Dist. LEXIS 10598 (S.D.N.Y. Mar. 15, 2006)…………………………………………… 8

Kearins v. Panalpina, Inc., 570 F. App'x 9 (2nd Cir. 2014)……………………………………… 8

Laubach v. Fid. Consumer Disc. Co., 686 F. Supp. 504 (E.D. Pa. 1988)………………………… 17

Marathon Funding Servs. v. Berg, No. C19-0828-JCC,
2020 U.S. Dist. LEXIS 178016 (W.D. Wash. 2020)…………………………………………… 10

Mauro v. Countrywide Home Loans, Inc., 727 F. Supp. 2d 145 (E.D.N.Y. 2010)………… 11, 12

Metzger v. Aetna Ins. Co., 227 N.Y. 411, 125 N.E. 814 (N.Y. 1920)………………………... 8, 9

OneWest Bank, N.A. v. Hawkins, No. 14 CV 4656 (NGG),
2015 U.S. Dist. LEXIS 131774 (E.D.N.Y. Sep. 2, 2015)………………………………………... 7

Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379 (S.D.N.Y. 2014)….. 8

Plenitude Capital LLC v. Utica Ventures, LLC, 592 F. Supp. 3d 82 (E.D.N.Y. 2021)……….. 6, 7

Prifti v. PNC Bank, N.A., Civ. No. 01-1163,
2001 U.S. Dist. LEXIS 16387 (E.D. Pa. 2001)……………………………………………….. 10, 11

Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51 (2nd Cir. 2017)………………………………... 5

Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313 (E.D.N.Y. 2010)……………………. 8

SEC v. Frohling, 851 F.3d 132 (2nd Cir. 2016)………………………………………………………... 5

Selman v. Manor Mortg. Co., 551 F. Supp. 345 (E.D. Mich. 1982)…………………………… 11

Skidelsky v. Merendino, 133 A.D.2d 149, 518 N.Y.S.2d 822 (2nd Dep't 1987)……………….. 15

Smith v. Fidelity Consumer Discount Co., 898 F.2d 907 (3rd Cir. 1990)……………………… 17

Szerdahelyi v. Harris, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (N.Y. 1986)……….. 15

Timber Doodle Glade Equity Venture, LLC v. D.E. Shaw Laminar Lending, Inc.,
Civ. No. 06-cv-00799-WDM-CBS, 2007 U.S. Dist. LEXIS 49048 (D. Colo. 2007)………….... 10

Titan Capital ID, LLC v. Tomtab, LLC,
2019 N.Y. Slip Op. 31790(U) (Sup. Ct. N.Y. Cty. 2019)……………………………………... 7, 8

United States v. Freidus, 769 F. Supp. 1266 (S.D.N.Y. 1991)…………………………………... 6

**Statutes**
12 U.S.C. 1735f–5………………………………………………………………………….. 16, 17

12 U.S.C. § 1735f–7a……………………………………………………………………….. 16

15 U.S.C. § 1602………………………………………………………………….. 10, 11, 16

Banking Law § 6-l……………………………………………………………………….. 13, 14

Banking Law § 14-a………………………………………………………………………... 15

Fed. R. Civ. Pro. 56………………………………………………………………………….. 5

G.B.L. § 349………………………………………………………………….................. 1

G.O.L. § 5-501……………………………………………………………………….. 14, 15

R.P.A.P.L. § 1303…………………………………………………………………….... 7, 8, 9

R.P.A.P.L. § 1304…………………………………………………………………….... 7, 8, 9

R.P.A.P.L. § 1306…………………………………………………………………….... 7, 8, 9

**Regulations**
3 N.Y.C.R.R. § 4.2………………………………………………………………… 18

3 N.Y.C.R.R. § 4.3………………………………………………………………… 18

**Legislative Memoranda**
Mem. in Supp. of L. 2009, ch. 507, 2009 McKinney's Session Laws of N.Y. at 1844………….. 7

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted by the Defendant, IZIA ROKOSZ (hereinafter "Mr. Rokosz"), in Support of his Motion for Summary Judgment. The Motion should be granted and Mr. Rokosz should be permitted to foreclose the subject real property.

This action started with an Order to Show Cause claiming a broad conspiracy (even involving the attorneys and title closers!) at two loan closings ten days apart to steal a house from a homeowner, but over time the more adventurous claims (G.B.L. § 349 and Civil RICO) have been withdrawn, and the facts, as fully exhibited, stand in sharp relief to those sensational claims. At this point, Plaintiff's only claims that remain are typical defenses to foreclosure refashioned as affirmative claims, and they are barred for the reasons explained below. Upon Mr. Rokosz's establishment of his entitlement to judgment as a matter of law on his foreclosure counterclaim, he should be granted the right to enter a judgment of foreclosure and sale accordingly.

Plaintiff initially brought this action claiming Mr. Rokosz had masterminded a scheme "to target distressed homeowners with equity in their homes, issue hard money loans with such onerous terms and costs that default and immediate deed transfer are guaranteed, all while completely stripping the home of equity." ECF Dkt. No. 1, ¶ 212. Plaintiff now knows that these allegations were never true; Mr. Rokosz did not target anyone, Mr. Rokosz did not issue loans upon terms that guaranteed default and/or immediate deed transfer, and even according to the operative Amended Complaint, Mr. Rokosz believed that the Borrower would exit the loan using traditional, institutional financing (and presumably no refinancing bank would issue a loan where there was no equity in the property, so "stripping the home of equity" was never the case). Just as Plaintiff, CARLA BARKER (hereinafter "Plaintiff"), was forced to recognize the lack of merit in two of her six claims, judgment as a matter of law should now be granted as to the other four.

**FACTUAL BACKGROUND**

At a real estate closing at Mr. Rokosz's counsel's Long Island office that occurred on February 6, 2017, sellers Sandra Vaughan and Plaintiff, who co-owned the real property located at 611 E. 48th Street, Brooklyn, New York (hereinafter the "Property"), sold the Property to purchaser J&M Property Holdings Inc. (hereinafter "Borrower"). See Ex. A; SUMF, ¶ 4. However, there were a number of liens on the Property, including property tax liens dated November 16, 2011, November 29, 2013, August 16, 2012, May 31, 2015, August 13, 2014, and August 10, 2016 for arrearages that the sellers had permitted to persist for over half a decade. See Ex. G; SUMF, ¶ 9. Moreover, the Property, which is a two-family residential house, was in poor condition and needed significant repair work and renovation in order to make it habitable for the approximately seven tenants Borrower intended to house in the Property. See Ex. A; SUMF, ¶¶ 3. Mr. Rokosz verily believed that once the Property was repaired/renovated and (the approximately seven rooms) tenanted, the Borrower would be able to obtain traditional financing to repay the loans. See Second Am. Compl., ¶ 30.

In advance of the February 6, 2017 loan closing, without Mr. Rokosz's knowledge or instruction, Borrower had been formed by Plaintiff's friend/associate Janelle Defreitas (hereinafter "Defreitas"). See SUMF, ¶ 10. When Defreitas formed Borrower, Defreitas told Plaintiff that Plaintiff would become the owner of the Property through Borrower. See SUMF, ¶ 11. Significantly, Mr. Rokosz never communicated with Plaintiff regarding the loans, and Defreitas was the person who required Plaintiff to form a company and deed to it the Property in order to obtain a mortgage loan secured by the Property. See SUMF, ¶¶ 12-13.

Accordingly, at the February 6, 2017 closing, consideration of $150,000.00 was paid to seller Sandra Vaughan, who, with Plaintiff, conveyed the Property to the purchaser, Borrower. See

Ex. A, p. 6; Ex. I; SUMF, ¶¶ 5, 22. The tax documents filed with the Deed to Borrower indicate the transfer of the Property for consideration, although Borrower (acting by and through Plaintiff) did <u>not</u> indicate therein that a transfer had been effectuated between relatives or former relatives or that there was some identity between the sellers and buyer. <u>See</u> Ex. A.

Borrower utilized the $330,000 of funds loaned to it by Mr. Rokosz to authorize and direct each of the following disbursements: $150,000.00 to seller Vaughan in consideration of the purchase, $107,850.65 to clear title to the Property pay for title-related services, $5,500 to the lawyers and notary, $6,440 to the brokers, $45,792.68 retained in escrow pursuant to a written escrow agreement, and $14,416.67 to a home improvement contractor. <u>See</u> Exs. I, Q; SUMF, ¶¶ 19-25. Each and every one of the foregoing disbursements from the February 6, 2017 closing was reviewed, authorized, and approved in writing by Borrower (acting by and through Plaintiff). <u>See</u> Ex. I; SUMF, ¶ 21.

At the February 6, 2017 closing, Borrower received very candid advice from its attorney, F. Richard Hurley, Esq. <u>See</u> Ex. H; SUMF, ¶¶ 26-27. Specifically, Mr. Hurley advised Borrower: "**DO NOT BORROW FROM THIS PRIVATE LENDER.** This is what is known as hard money which is at a higher interest rate and meant for those borrowers who may be desperate. Usually, borrowers cannot afford these types of loans and will most likely default in the future." <u>See</u> Ex. H (bold in original); SUMF, ¶ 27. Despite this clear warning, Borrower elected to proceed with the February 6, 2017 purchase and loan transaction. <u>See</u> SUMF, ¶ 28. Borrower executed various documents at the closing, including a Note, Mortgage, Corporate Resolution, Escrow Agreement, and Fund Disbursements Sheet, and Plaintiff offered her personal Guarantee of Borrower's obligations. <u>See</u> Exs. B, C, D, E, F, I.

Primarily in order for Borrower to obtain funds to pay its contractor Lockdeco to complete renovations at the Property for the anticipated approximately seven rooms that would be rented out to tenants, a second closing, for a further loan, was held ten days later, on February 16, 2017. See SUMF, ¶¶ 29-30. At the second closing, a further loan of $120,000 was advanced by Mr. Rokosz, which loan was secured by the Property and used to form a single, consolidated first lien on the Property in the sum of $450,000. See SUMF, ¶¶ 30, 33.

Borrower utilized the $120,000 of funds loaned to it by Mr. Rokosz at the February 16, 2017 closing to authorize and direct each of the following disbursements: $78,140.70 to a home improvement contractor, $1,193.42 in interest that had already accrued on the First Loan since the February 6 closing, $3,715.88 to the title company for title-related services, $5,350 to the lawyers and notary, $17,200 to the brokers, and $14,400 retained in escrow pursuant to a written escrow agreement, and. See Exs. R, U; SUMF, ¶¶ 36-41. Each and every one of the foregoing disbursements from the February 16, 2017 closing was reviewed, authorized, and approved in writing by Borrower (acting by and through Plaintiff). See Ex. R; SUMF, ¶ 38.

At the February 16, 2017 closing, Borrower received further candid advice from its attorney, F. Richard Hurley, Esq. See Ex. O; SUMF, ¶ 42. Despite this further warning, Borrower elected to proceed with the February 16, 2017 loan transaction. See SUMF, ¶ 43. Borrower executed various documents at the closing, including a Note, Mortgage, Corporate Resolution, Escrow Agreement, and Fund Disbursements Sheet, and Plaintiff offered her personal Guarantee of Borrower's obligations. See Exs. J, K, L, M, N, R.

Borrower defaulted upon the loans and has never made a payment thereon, with the exception of the short-term interest on the First Loan that was paid at the February 16, 2017. See SUMF, ¶ 44. In the months after the Borrower defaulted, Mr. Rokosz requested to have money

released from the escrowed funds in order to cover payments due on the First and Second Notes and Mortgages, but the escrow agent declined to release any funds, citing pending legal action. See SUMF, ¶ 45. Whether the amounts in escrow were to have been released or not to cover the defaulted monthly payment obligations, Borrower defaulted again, and to a much greater degree, on the February 2018 maturity dates of the First and Second Notes, when Borrower failed and refused to pay the entire amounts due on both Notes. See SUMF, ¶ 46.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment upon a "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought." Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51, 54 (2nd Cir. 2017) (alterations in original).

"A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." SEC v. Frohling, 851 F.3d 132, 136 (2nd Cir. 2016). A fact is material if it "might affect the outcome of the suit under the governing law….Factual disputes that are irrelevant or unnecessary will not be counted" in the summary judgment calculus. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## I.    SUMMARY JUDGMENT AS TO FORECLOSURE SHOULD BE GRANTED

With respect to Mr. Rokosz's counterclaim, "New York courts require that the plaintiff in an action to foreclose a mortgage demonstrate: 'the existence of the mortgage and mortgage note,

ownership of the mortgage, and the defendant's default in payment.'" Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018) (citing Campaign v. Barba, 23 A.D.3d 327 (2nd Dep't 2005)); see also United States v. Freidus, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991) ("In an action to foreclose on a mortgage, the essential requirements of the plaintiff's case are proof of the existence of an obligation secured by a mortgage, and a default on that obligation."). "Courts in this district have appointed a referee to conduct the sale of the property where the plaintiff has established a *prima facie* case of foreclosure and sale." Plenitude Capital LLC v. Utica Ventures, LLC, 592 F. Supp. 3d 82, 86 (E.D.N.Y. 2021).

Mr. Rokosz's submission undoubtedly establishes a *prima facie* case of foreclosure. The existence of the mortgages, which are recorded in the Office of the Register of the City of New York at C.R.F.N. 2017000082688 and 2017000082689, is a matter of public record and is beyond dispute. See Exs. C, K; SUMF, ¶¶ 16, 32. Moreover, the existence of the two executed notes, one in the amount of $330,000.00 and a second in the amount of $120,000.00, is undisputed. See Exs. B, J; SUMF, ¶¶ 14, 30. It is likewise undisputed that Mr. Rokosz actually advanced the aggregate sum of $450,000 from his own funds, none of which amount was paid back to him. See Exs. B, J; SUMF, ¶¶ 14, 30, 44, 46.

These facts clearly establish a *prima facie* case for foreclosure as a matter of law. The burden now shifts to Plaintiff to raise a triable issue of fact as to a *bona fide* defense to the instant counterclaim. This Plaintiff cannot do.

## II.      THE DEFENSES TO FORECLOSURE SHOULD BE DISMISSED

Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its *prima facie* entitlement to judgment, and the burden shifts to the defendant to demonstrate that there is a triable issue of fact with respect to the merits of the defenses and/or

counterclaims." <u>OneWest Bank, N.A. v. Hawkins</u>, No. 14 CV 4656 (NGG), 2015 U.S. Dist. LEXIS 131774, at *13 (E.D.N.Y. Sep. 2, 2015) (internal citations omitted).

Plaintiff's defenses to foreclosure essentially boil down to one proposition: when one entirely disregards the form of the transaction and looks at its substance, this was a residential real estate loan, and therefore all requirements (and consequently defenses) regarding home loan foreclosures apply. But of course, the form of a transaction is important, and it cannot be, as Plaintiff urges, entirely disregarded. Most significantly though, Plaintiff overlooks that this was a commercial transaction at its heart. The affirmative defenses entirely lack merit.

1. **The R.P.A.P.L. §§ 1303, 1304, and 1306 Defenses Are Inapplicable**

Pursuant to <u>R.P.A.P.L.</u> § 1303(1)(a),[1] the "foreclosing party in a mortgage foreclosure action involving residential real property shall provide notice to any mortgagor if the action relates to an owner-occupied one-to-four family dwelling…." <u>R.P.A.P.L.</u> § 1303(1)(a), by its plain terms, refers to a notice entitled "Help for Homeowners in Foreclosure" and does not apply where, as

---

[1] There is a separate notice (entitled "Notice to Tenants of Buildings in Foreclosure") required by <u>R.P.A.P.L.</u> § 1303(1)(b), but that provision could not be said to apply here because Plaintiff is not a "tenant" of the Property within the meaning of that statute. <u>See</u> <u>Titan Capital ID, LLC v. Tomtab, LLC</u>, 2019 N.Y. Slip Op. 31790(U), ¶ 3 (Sup. Ct. N.Y. Cty. 2019) ("Defendants did not produce a lease showing that they are tenants of the property and, therefore, they are not entitled to a notice pursuant to <u>R.P.A.P.L.</u> 1303(1)(b); <u>accord</u> <u>Plenitude Capital LLC v. Utica Ventures, LLC</u>, No. 18-CV-2702 (MKB) (RER), 2019 U.S. Dist. LEXIS 99565, at *10 (E.D.N.Y. June 11, 2019) ("The notice requirement [of <u>R.P.A.P.L.</u> § 1303(1)(b)] protects not only those with formal lease agreements, but also any person who, at a specified time, 'is a party to an oral or implied rental agreement with the mortgagor and obligated to pay rent to the mortgagor or such mortgagor's representative, for the use or occupancy of one or more dwelling units of a residential real property'"). In addition, the New York State Legislature's intent in requiring this notice is to ensure that tenants of properties subject to a foreclosure action become "fully aware" of the action at the outset and the "status of the property" to "allow them to make informed decisions about whether they should remain in such property," a statutory scheme that would not at all be furthered by extending its protections to an individual such as Plaintiff. <u>650 Brooklyn LLC v. Hunte</u>, 47 Misc. 3d 885, 896, 3 N.Y.S.3d 909, 917 (Sup. Ct. Kings Cty. 2015) (quoting Mem. in Supp. of L. 2009, ch. 507, 2009 McKinney's Session Laws of N.Y. at 1844).

here, there is a corporate borrower, which lacks the capacity to "occupy" a residential property. See Titan Capital ID, LLC v. Tomtab, LLC, 2019 N.Y. Slip Op. 31790(U), ¶ 4 (Sup. Ct. N.Y. Cty. 2019) ("A plain reading of [R.P.A.P.L. § 1303(1)(a)] compels the conclusion that Tomtab was not entitled to a R.P.A.P.L. § 1303 notice because, as a corporate entity, it does not and cannot occupy the apartment.").

Here, the two subject loans were given to Borrower (J&M Property Holdings Inc.), a corporation which, as a matter of law, cannot occupy a person's residence. See Id. In addition, though Plaintiff's first affirmative defense implies that Plaintiff is the mortgagor, that is clearly untrue, as (i) Borrower was designated as the borrower pursuant to all of the loan documents, which were signed by Plaintiff, and (ii) as a matter of law, Plaintiff is charged with actual knowledge of and having agreed to that which she signed. See, e.g., Kearins v. Panalpina, Inc., 570 F. App'x 9, 10 (2ⁿᵈ Cir. 2014) ("Under New York law, a person who signs an agreement is conclusively bound by it even if he did not read the agreement or understand its terms"); Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 393 (S.D.N.Y. 2014) ("under New York law, a signatory to a contract has the responsibility to read the contract he or she signs and is bound by the terms that are in an executed contract"); Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 324 (E.D.N.Y. 2010) ("it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them"); Imperatore v. Putnam Lovell NBF Sec. Inc., No. 05 CV 4966 (RPP), 2006 U.S. Dist. LEXIS 10598, at *15 (S.D.N.Y. Mar. 15, 2006) (finding that it was plaintiff's "responsibility to read and make sure he understood the contracts he signed"); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2ⁿᵈ Cir. 2004) (individual "who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them"); Metzger v. Aetna Ins. Co., 227 N.Y. 411,

416, 125 N.E. 814, 816 (N.Y. 1920) (same). Accordingly, it is respectfully submitted that the R.P.A.P.L. § 1303 defense is inapplicable in the instant case.

The same goes for Plaintiff's second and third affirmative defenses, which relate to the 90-day-notice transmission and filing requirements, respectively, of R.P.A.P.L. §§ 1304 and 1306. Pursuant to the version of R.P.A.P.L. §§ 1304 in effect at the time this action was commenced, the requirement to send (and then register pursuant to R.P.A.P.L. § 1306) a 90-day notice applies to a "home loan," which is specifically defined to include only situations where "[t]he borrower is a natural person" and "[t]he loan is secured by a mortgage…on real estate improved by a one to four family dwelling…which is or will be occupied by the borrower as the borrower's principal dwelling."

But as stated above, as a matter of law, the corporate Borrower cannot occupy a dwelling as a residence. Similarly, the fact that Borrower is a company and not a natural person disables it from asserting a defense premised upon the home loan foreclosure requirements of R.P.A.P.L. §§ 1304 and 1306. Accordingly, summary judgment should be granted as to those affirmative defenses.

## 2. The TILA and HOEPA Claims/Defenses Are Inapplicable

The Truth-in-Lending Act ("TILA") requires certain disclosures to be made to a borrower when a "creditor" extends to a natural person a secured loan in a "consumer credit transaction." A "creditor" is a person who "(1) regularly extends…consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." For a loan to qualify as a "consumer credit transaction," it must have been extended (1) to a natural person (2) primarily for personal, family,

or household purposes. See 15 U.S.C. § 1602(i). Notably, "[i]t is **plaintiff [whom] has the burden** of showing that the transaction was a consumer credit transaction, not a business transaction." Friedman v. Maspeth Fed. Loan & Sav. Ass'n, 30 F. Supp. 3d 183, 190 (E.D.N.Y. 2014) (second alteration in original) (internal quotation mark omitted) (emphasis added).

Here, the loans were not granted to a natural person and were instead granted to the corporate Borrower, which utilized the funds to purchase for consideration the Property from a seller other than Plaintiff. Mr. Rokosz respectfully submits that the same should essentially end this inquiry. After all, various Courts over an extended period of time reviewing the statutory scheme have found that no TILA claim lies where the loans were given to a corporate borrower. See, e.g., B&B Capital Group 26 Llc v. Ctg Holding Group Llc, 2022 Fla. Cir. LEXIS 1169, *6 (Fla. Cir. Ct. March 7, 2022) (holding "when a loan is not extended to a natural person, TILA does not apply regardless of the purpose of the loan and no further analysis into the second element needs to be conducted" and collecting cases) (emphasis added); Marathon Funding Servs. v. Berg, No. C19-0828-JCC, 2020 U.S. Dist. LEXIS 178016, at *5 (W.D. Wash. 2020) (dismissing TILA claim and denying amendment on the basis "that loans to corporations are exempt regardless of the purpose of the credit extension and regardless of the fact that a natural person may guarantee or provide security for the credit," notwithstanding plaintiff's claim that "the defendants structured the transaction as a commercial loan even though they knew the collateral was owner-occupied property"); Timber Doodle Glade Equity Venture, LLC v. D.E. Shaw Laminar Lending, Inc., Civ. No. 06-cv-00799-WDM-CBS, 2007 U.S. Dist. LEXIS 49048, at *14 (D. Colo. 2007) (rejecting plaintiffs' request that Court "take the remarkable position that [it] should find the loan was made 'in actuality' to" individual plaintiff and to "disregard the Debtors' LLC status"); Prifti v. PNC Bank, N.A., Civ. No. 01-1163, 2001 U.S. Dist. LEXIS 16387, at *9 (E.D. Pa. 2001) ("It appears

to this Court that <u>the language of the statute is straightforward</u>: under section 1602(h), the credit transaction must extend to a 'natural person' and under section 1603(1), as defined in pertinent part in section 1602(c), credit transactions extended to corporations are exempted. Where a statute is clear and unambiguous, 'the sole function of the court is to enforce the statute according to its terms.'") (quoting <u>Hotel Employees and Restaurant Employees Int'l Union Local 54 v. Elsinore Shore Assoc.</u>, 173 F.3d 175, 187 (3rd Cir. 1999)) (emphasis added); <u>Selman v. Manor Mortg. Co.</u>, 551 F. Supp. 345, 347-48 (E.D. Mich. 1982) (holding that "even if a loan may constitute a 'consumer credit transaction' under § 1602(h) of [TILA] because natural persons were offered credit and used it for personal purposes, so long as the credit was actually 'extended' to a corporation, TILA does not apply").

However, were the Court inclined to entertain Plaintiff's argument further and to examine whether the loans were part of a "consumer credit transaction," this Court should find that the loans were not consumer credit transactions. Although "[t]he Second Circuit has not articulated a standard for determining whether a loan is obtained for personal or business purposes under TILA," Courts in this District have recognized that such a determination has been held by Courts of Appeals in other Circuits to be fact-intensive analyses of the transaction at issue. <u>Mauro v. Countrywide Home Loans, Inc.</u>, 727 F. Supp. 2d 145, 153 (E.D.N.Y. 2010). In <u>Mauro</u>, this Court cited with approbation to the Ninth Circuit's test, which it found to require an examination of:

> (1) The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.
> (2) The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.
> (3) The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.
> (4) The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
> (5) The borrower's statement of purpose for the loan.

727 F. Supp. at 153.

An examination of the facts of the case bearing the foregoing factors in mind yields the conclusion that Plaintiff cannot meet her burden of demonstrating that the subject loans were consumer credit transactions. Regarding the first factor, although Borrower is a corporation that was formed to transact the kind of business referenced herein, Plaintiff, a home health care aide, was not, and thus this factor weighs in favor of Plaintiff. See Second Am. Compl., ¶¶ 1, 2, 30. However, the evidence shows that Plaintiff closely managed the acquisition by attending a purchase and two loan closings, signing all relevant documents, personally guaranteeing the loans, and maintaining a presence at the Property. See SUMF, ¶¶ 14-26, 29-42. This heavy personal involvement by Plaintiff weighs heavily in favor of finding this a business transaction. Regarding the fifth factor, there was no contemporaneous statement by the Borrower of the purpose for the loans, and thus this factor should be held to be neutral.[2]

Furthermore, the very important factors of the ratio of the income resulting from the acquisition to the preexisting income and the size of the transaction both weigh heavily in favor of finding that these were business/commercial transactions. The record is clear that Plaintiff was a home health care aide of modest means who was unable to resolve her prolonged property tax arrearage north of $70,000, let alone to acquire Property to be rented out to up to seven tenants. See SUMF, ¶ 9; Second Am. Compl., ¶¶ 1, 2, 30. Thus, the prospective income to be derived from renting the Property out to half a dozen or more tenants would certainly be considered substantial relative to her preexisting income, and the same is the case when comparing the size of

_____

[2] Post hoc, self-serving statements and testimony by Plaintiff as to what she feels in the context of this lawsuit may have been her "purpose" in taking out two successive loans of nearly half a million dollars ten days apart over the contrary advice of her own independent legal counsel should be entirely disregarded.

this transaction to her (nonexistent) preexisting real estate business dealings. See SUMF, ¶ 9; Second Am. Compl., ¶¶ 1, 2, 30.

On balance, the factors commonly associated with a determination as to whether a loan was taken out for business/commercial purposes as opposed to for personal, family, or household purposes weigh strongly in favor of a finding that this transaction (which was extraordinary for Plaintiff to be involved in) was done with the intent to generate significant income and profit for her. This yields the inescapable inference that TILA (and the related statute HOEPA) do not apply to these loans because they were consumer credit transactions for these loans that were extended to a corporate (and not a natural-person) Borrowers. Summary judgment should be granted regarding the TILA and HOEPA affirmative defenses and claims.

3.      **The Banking Law § 6-l Claim/Defense Is Inapplicable**

Banking Law § 6-l contains various prohibitions in the giving of "high-cost home loans," which the statute defines as "a home loan in which the terms of the loan exceed one or more of the thresholds" identified in the statute." Banking Law § 6-l(1)(d). "Home loan," in turn, is defined therein as "a loan…in which…(ii) The borrower is a natural person; (iii) The debt is incurred by the borrower primarily for personal, family, or household purposes; (iv) The loan is secured by a mortgage…on real estate improved by a one to four family dwelling…used or occupied…and which is or will be occupied by the borrower as the borrower's principal dwelling." Banking Law § 6-l(1)(e). Although Plaintiff concedes, as acknowledged above, that the loans were given to a corporate borrower who cannot as a matter of law occupy a dwelling (and Plaintiff's contention that the loans were given for personal, family, or household purposes is heavily disputed, as argued *supra*), Plaintiff relies upon the infrequently litigated subsection 3 of Banking Law § 6-l, which provides that Banking Law § 6-l's prohibitions "apply to any person who in bad faith attempts to

13

avoid the application of this section by any subterfuge." Plaintiff's reliance upon this provision is inapposite given the fully exhibited facts of this case.

Here, Plaintiff has cited the formation of Borrower in the months before the first closing and Mr. Rokosz's acknowledgement that he would not have loaned the significant sums to Plaintiff individually as evidence. But an acknowledgement of a preference for doing business and actions taken by Plaintiff and her friend Defreitas without Mr. Rokosz's knowledge do not a bad-faith statutory-level subterfuge make! <u>See</u> SUMF, ¶¶ 10-12. Indeed, the record shows that Borrower was formed not at Mr. Rokosz's insistence, but rather **at the initiative of Defreitas**. <u>See</u> SUMF, ¶¶ 10-12. Furthermore, there is no evidence whatsoever that (as Plaintiff originally argued) the subject loans were designed to fail and to cause Plaintiff to lose her home. Finally and perhaps most importantly, it is undisputed that Mr. Rokosz actually believed these loans would be successful in the sense that Mr. Rokosz verily believed that once the Property was repaired/renovated and rooms tenanted, the Borrower would be able to obtain traditional financing to repay the loans. One of these facts, standing alone, would likely be enough to sink the claim that there was some kind of "subterfuge" present, but these facts, taken together, blow out of the water the assertion that Mr. Rokosz engaged in "subterfuge" to avoid the application of a high-cost home loan statute.

## 4. <u>The Usury Claim/Defense Is Inapplicable</u>

In the Seventh affirmative defense and Fourth claim, Plaintiff argues that the subject loans violated N.Y. General Obligations Law § 5-501, which provides, in relevant part:

> No person or corporation shall, directly or indirectly, charge…any money…as interest on the loan or forbearance…of any money…at a rate exceeding the rate above prescribed. The amount charged, taken or received as interest shall include any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance as defined by the superintendent of

> financial services pursuant to subdivision three of section fourteen-a of the
> banking law.

G.O.L. § 5-501(2). The "rate above prescribed," referred to in G.O.L. § 5-501(2) is "six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law." Banking Law § 14-a(1), in turn, states that the "maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum," and Banking Law § 14-a(3) then delegates to the Superintendent of Financial Services the "power to adopt such regulations as the superintendent shall deem necessary or proper to implement the provisions of this section." With the foregoing statutory scheme in mind, there are at least three reasons why the subject loans were not usurious.

First, it is black letter law in New York that the usury laws do not apply to a purchase money mortgage because it is not considered a "loan or forbearance" within the meaning of G.O.L. § 5-501. Skidelsky v. Merendino, 133 A.D.2d 149, 149, 518 N.Y.S.2d 822, 822 (2ⁿᵈ Dep't 1987); see also Chiquita Fresh N. Am., LLC v. Long Island Banana Corp., 198 F. Supp. 3d 171, 200 (E.D.N.Y. 2016); Szerdahelyi v. Harris, 67 N.Y.2d 42, 46, 499 N.Y.S.2d 650, 653, 490 N.E.2d 517, 520 (1986) ("A purchase-money mortgage is generally defined as a mortgage executed at the time of purchase of the land and contemporaneously with the acquisition of the legal title, or afterward, but as part of the same transaction, to secure an unpaid balance of the purchase price"). It is indisputable that at least the First Loan, if not the Second Loan as well, was given contemporaneously with the transfer of title to the Property to Borrower, which used the funds advanced by Mr. Rokosz to pay, *inter alia*, the $150,000 of consideration to seller Sandra Vaughan listed in the conveyance documents. See Ex. A, p. 6; Ex. I. Thus, the usury laws do not apply to this purchase-money mortgage situation.

Second, though as argued above Mr. Rokosz does not believe he qualifies as a "creditor" within the meaning of TILA, to the extent the Court finds that he may be a "creditor," the usury laws are preempted with regard to the subject loans by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA"). 12 U.S.C. § 1735f–7a provides, in pertinent part:

> (1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
> (A) secured by a first lien on residential real property…;
> (B) made after March 31, 1980; and
> (C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f–5(b))….

12 U.S.C. § 1735f–5(b), in pertinent part, states: "the term 'federally related mortgage loan" means any loan which (1) is secured by residential real property designed principally for the occupancy of from one to four families; and (2)(D) is made in whole or in part by any "creditor", as defined in section 1602 of title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.

15 U.S.C. § 1602(g) defines "creditor" as "a person who both (1) regularly extends…consumer credit which is payable by agreement in more than four installments…, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness…." While Mr. Rokosz, of course, disputes that this case concerns "consumer credit" or a "creditor" within the meaning of TILA, in the event the Court finds that these terms may apply, DIDMCA should also apply.

Moreover, it is undisputed the loans were funded by Mr. Rokosz, after March 31, 1980, and were secured by a first-priority lien on the Property, which has a two-family house. Thus, in order to employ DIDMCA to preempt New York's usury laws, all Mr. Rokosz need do is present

16

evidence that he gave $1 million or more in mortgage loans secured by residential real estate in the year of the Loans at issue, 2017. See 12 U.S.C. § 1735f–5(b); Brown v. Inv'rs Mortg. Co., 121 F.3d 472, 477 (9th Cir. 1997)' Laubach v. Fid. Consumer Disc. Co., 686 F. Supp. 504, 510 (E.D. Pa. 1988); aff'd in part by Smith v. Fidelity Consumer Discount Co., 898 F.2d 907 (3rd Cir. 1990).

Furthermore, Mr. Rokosz has affirmed that he actually made more than $1 million of residential real estate mortgage loans annually when he gave the Loans. See Rokosz Aff., ¶¶ 5-9;[3] Exs. S, T. Accordingly, DIDMCA preemption operates to preempt New York's usury laws with respect to the Loans, and the usury affirmative defense/claim should be dismissed.

Third, the actual charges were not usurious. The loans each carried a nominal twelve percent (12%) interest rate, and even taking all inferences in Plaintiff's favor, the only additional charges "payable…to or for the account of the lender in consideration for making the loan" were, the $8,713.33 payable to Royce LLC and the $6,500 payable to Steven G. Legum, Esq. (Mr. Rokosz's broker and attorney, respectively). The remainder of the charges itemized on the disbursement sheets for the loans were directed by the Borrower and used to pay for services utilized by Borrower or to help clear title to Borrower's asset, and thus those items cannot be counted as interest. The two charges, thus, would increase the effective interest rate as high, rounding up, as 15.4%, which is below the usury limit.

---

[3] Mr. Rokosz's declaration itself is enough evidence to employ DIDMCA preemption. See Brown v. Inv'rs Mortg. Co., 121 F.3d 472, 477 (9th Cir. 1997) ("The lenders' declarations were sufficient to establish the aggregate value of their loans for purposes of summary judgment. The declarations were based on personal knowledge, set forth facts that would be admissible in evidence, and showed affirmatively the affiants would be competent to testify to the matters therein. See Fed. R. Civ. P. 56(e). Testimony by the lenders that the loans totaled $1,000,000 would be admissible in court and, if not countered by opposing evidence, would be sufficient to establish that conclusion in a trial."); Laubach v. Fid. Consumer Disc. Co., 686 F. Supp. 504, 510 (E.D. Pa. 1988)

To the extent that Plaintiff argues that employing the regulations of the superintendent of financial services codified at 3 N.Y.C.R.R. § 4.2 renders the loans usurious, this effort must be rejected, although even employing it would not render the loans usurious. Those regulations specify that they apply only to a "one- or two-family residence occupied by the owner," and, as noted above, as a matter of law, Borrower cannot occupy the Property as its residence. 3 N.Y.C.R.R. §§ 4.2, 4.3. Moreover, those regulations explicitly exclude from calculations of interest various reasonable expenses Plaintiff would have this Court include as interest here, including title examinations, title insurance, legal services and reasonable disbursements related thereto, notarizations, and the like. Thus, under this rubric, the sums disbursed to Steven G. Legum, Esq. do not even count as interest, and thus the actual interest rate is reduced to under 14%. See Exs. I, R; 3 N.Y.C.R.R. § 4.3.

Therefore, it is respectfully submitted that the various defenses to foreclosure, which have been refashioned into affirmative claims in the Complaint, are ineffective to raise a triable issue of fact as to a genuine defense to this action. Summary judgment should be granted regarding these hybrid affirmative defenses/claims.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, Mr. Rokosz respectfully requests that the Court grant in its entirety this motion for summary judgment and appoint a referee to calculate the amounts due under the Notes and Mortgages, and grant such other and further relief as this Court deems just and proper.

Dated: July 18, 2023
      Monsey, New York

Respectfully submitted,

By: _/s/Jeremy M. Doberman_____
Jeremy M. Doberman, Esq.
Marc Wohlgemuth & Associates, P.C.
*Attorneys for Defendant Izia Rokosz*
21 Remsen Avenue, Suite 301
Monsey, NY 10952
(845) 746-2700
(845) 746-2701
JeremyD@MarcWLaw.com